Ex Parte W. P. Denny.

No. 34. Decided June 15, 1910.

**1.—City Charter and Ordinance—License Fee—Occupation Tax—Vehicle.**

Where the city charter provided that the specification of particular powers should not be construed as a limitation upon the powers therein granted, and gave the city the exclusive power of control over the streets, besides special power to license drivers of vehicles, etc., an ordinance licensing such persons was authorized under the general powers of the city charter as well as the special provisions of the charter, and the latter are not a limitation on the first; and as such ordinance was a mere regulation of such drivers, the same was a license fee and not an occupation tax. Following Brown v. Galveston, 97 Texas, 1.

**2.—Same—Difference between License Fees and Occupation Tax.**

License fees are not taxation, but prices paid for the privilege of exercising a franchise. It is a tax only when revenue is the main purpose for which they are imposed. The regulation of a business is usually and most effectually accomplished by means of a license.

**3.—Same—General Powers over Streets—Special Provisions.**

If there could be any doubt as to the authority of the city under its charter to impose the license fee under the special provisions of the charter, there would seem to be no question that in view of the general authority given the city council over streets, and to prescribe upon what streets vehicles, etc., may stand, that the specification of particular powers would not be considered as a limitation upon said general powers.

**4.—Same—Owners—Drivers—Keepers.**

Where the city charter authorized the council to license, tax and regulate, hackmen, draymen, omnibus drivers, wagon drivers, and drivers of vehicles of every kind and all others pursuing like occupation, the same was broad enough to include both the owners and keepers of same, where such vehicles were actually driven by another as well as the owners of such vehicles who drove same; besides the general police power of the city under the general provisions of the charter gave the right to pass such ordinance.

**5.—Same—Reasonably Necessary Regulations.**

Where, upon trial under a habeas corpus proceeding, the evidence sustained the finding of the court that the license fee charged upon all drivers of vehicles in an incorporated city was reasonable and necessary to regulate the business affected, such findings will not be disturbed on appeal.

**6.—Same—Rule as to Reasonable License Fee.**

The amount to be exacted as license is not to be solely confined to the expense of issuing the same, but a reasonable compensation may be charged for the additional expense of municipal supervision over the particular business or vocation.

Appeal from the County Court of Lamar. Tried below before the Hon. L. L. Hardison.

Appeal from a habeas corpus proceeding asking release from arrest for the violation of a city ordinance in not paying a license as hack driver for hire.

The opinion states the case.

*Allen & Dohoney* and *Clarence Sperry,* for relator.—On the question that the tax was an occupation tax and not a license fee and unauthorized by the city charter:· Hoefling & Son v. City of San Antonio, 85 Texas, 228; Ex parte Terrell, 40 Texas Crim. Rep., 28, 48 S. W. Rep., 504; City of Laredo v. Loury, 20 S. W. Rep., 89; Cooley on Taxation, p. 579; Dillon on Munic. Corporations, p. 357.

On question of want of authority of city to enact an ordinance regulating the owners and keepers of such vehicles: Vosburg v. McCrary, 77 Texas, 568; Cooley on Const. Limitations, p. 227.

*Edgar Wright,* for respondent.—On question that city ordinance is police regulation levying a license and not an occupation tax: Ex parte Gregory, 20 Texas Crim. App., 210; City of Mankato v.

Fowler, 20 N. W. Rep., 361; Van Hook v. Selma, 70 Ala., 361, and authorities. cited in opinion.

Upon question of reasonableness of license fee: Brewster v. City of Pine Bluff, 65 S. W. Rep., 934; City of Fayetteville v. Carter, 12 S. W. Rep., 573, and cases cited in opinion.

Upon question of validity of ordinance under authority of general powers conferred on city: Munn v. Ill., 94 U. S., 113; Barbier v. Connelly, 113 U. S., 27; Nashville v. Linck, 80 Tenn., 499; Hill v. St. Louis, 60 S. W. Rep., 116; Scudder v. Hinshaw, 134 Ind., 56: Kinsley v. Chicago, 124 Ill., 359, and cases cited in opinion.

On question that the ordinance was valid under the powers conferred on the city over streets: Smith v. Madison, 7 Ind., 86; Anderson v. O'Conner, 98 Ind., 168; Brooklyn v. Breslin, 57 N. Y., 591; Gartside v. E. St. Louis, 43 Ill., 47.

On question that license was authorized by city charter to license, tax and regulate hackmen, etc.: Ferry Co. v. E. St. Louis, 107 U. S., 365; Allerton v. City of Chicago, 6 Fed. Rep., 555; Johnson v. Philadelphia, 60 Pa. St., 445; Munn v. Ill., 94 U. S., 113, and cases cited in opinion.

*John A. Mobley,* Assistant Attorney-General, for the State.

RAMSEY, JUDGE.—On February 7, 1908, relator filed with Hon. L. L. Hardison, county judge of Lamar County, a petition for writ of habeas corpus, alleging that he was illegally restrained of his liberty by one Charles A. Minton, chief of police of the city of Paris. The return showed that he was held by virtue of a warrant of arrest issued by A. Twyman, clerk of the Corporation Court in the city of Paris, under a complaint charging him with unlawfully running and keeping for public use and hire, within the limits of said city a certain four-wheeled vehicle without having paid the license fee therefor prescribed by the ordinance of said city. The ordinance levying such license fee is claimed to be invalid and no authority for the detention of relator for many reasons. (1) It is claimed that under pretense of fixing a mere license fee that in fact same is an occupation tax attempted to be levied and imposed upon an occupation not taxed by the State of Texas. (2) That if the sum so fixed for running such vehicle can be considered as a license fee that it is unreasonable and excessive and greatly in excess of the amount required to enforce the regulation of the business therein mentioned by the said city. (3) That said ordinance is void and the city council of the city of Paris was without authority to enact same and the charter of said city does not authorize and empower the council to enact said ordinance regulating the owner and keeper of such vehicles.

1. Section 273 of the Act of the Twenty-ninth Legislature, pp. 31 to 62 inclusive, provides that the Act incorporating the city of

Paris shall be deemed a public Act and judicial notice of same shall be taken thereof in all the courts. In addition to the special provisions which may be held to relate to the matter in hand, section 6 of said Act provides as follows: "Said corporation of the city of Paris may pass and establish such Acts, laws, rules, regulations and ordinances not inconsistent with the Constitution of this State, as shall be advisable or needful for the government, interest, welfare, sanitation, health and general good of said corporation and of the inhabitants thereof. Provided, that the specification of particular powers shall not be construed as a limitation upon powers herein granted." In addition to this general provision we find the following special provision, in which the following authority is granted said city: "To have and exercise full power and control over the ·streets and public grounds of the city and to prohibit, abate and remove all encroachments or obstructions thereon; to require the removal from the streets and sidewalks, of all telegraph, telephone, street railway or other poles carrying electric or other wires; all signs, fruit stands, show cases and all obstructions of whatever kind or character; to open, alter, abolish, widen, extend, establish, regulate, grade, pave, clean or otherwise improve said streets and to protect the same from all encroachments and injury of any kind whatever."

"To prescribe over or upon what streets of the city heavy hauling or driving may be done and prohibit the use of other streets for such purposes; to fix and regulate the weight of any loads which may be hauled over or upon the streets of the city; to fix, prescribe and regulate the width of tires upon all vehicles used over and upon the streets of the city; to prescribe and enforce proper penalties for the enforcement of such rules and regulations.

"The city of Paris shall have exclusive control and power over the streets, sidewalks and public grounds of the city.

"To prescribe and regulate upon what street or streets public carriers, hacks or other vehicles may stand." That the sums imposed in the regulation of such business are license fees and not occupation taxes, in the sense in which these terms are used, has been quite uniformly held by all the courts of this State. In the case of Brown v. Galveston, 97 Texas, p. 1, it was held that where a city is authorized to levy a license tax on a particular property or business and such tax has been imposed, it will be presumed that the levy was made for the purpose authorized by law, and it was there held in a matter quite similar to this, that the commissioners had a right to require a license and payment therefor and that the fee charged is not unreasonable, nor is it double taxation, and therefore is not in conflict with the Constitution. Almost the identical question here raised was decided by this court adversely to relator in the case of Ex parte Ed. Wilson, 56 Texas Crim. Rep., 1, 117 S. W., 1197, in which Judge Brooks, speaking for the court, in terms approved the decision of the Court of Civil Appeals for the 5th Supreme Judicial District in the case of Kis-

singer v. Hay, 113 S. W., 1105. These authorities are in harmony with the earlier case of Ex parte Gregory, 20 Texas Cr. App., 210, which contains an elaborate discussion of all the principles and rules of construction approved by the best authors on municipal law. License fees are not taxation, but prices paid for the privilege of exercising a franchise. It is a tax only when revenue is the main purpose for which they are imposed. 1 Desty on Taxation, p. 305. Again, it is said that the regulation of a business or occupation is usually and most effectually accomplished by means of issuing a license provided for by ordinance. Smith's Mun. Corp., vol. 1, p. 1387.

2. If there could be any doubt as to the authority of the city of Paris, under its charter, to levy the tax under the special provision quoted above, there would seem to be no question that in view of the general authority given over streets, public grounds, sidewalks, and under this authority to prescribe and regulate upon what streets public carriers, hacks, or other vehicles may stand, taken in connection with the saving clause in section 6 of the article, that the specification of particular powers shall not be considered as a limitation upon powers therein granted, that such city had under its general authority ample power to pass the ordinance in question. Stone v. Miss., 101 U. S., 814; Dillon's Municipal Corporations, vol. 1, sec. 316. The first named case is authority for the proposition that ordinarily where powers are conveyed by special enumeration, unless there is some provision in the Constitution restricting the power of the Legislature in respect to the particular matter, such powers may also be conferred in general terms, and it is observed that courts have always experienced a difficulty in defining and enumerating the police powers and have ordinarily preferred to determine whether a particular case comes within the general scope of the power than to give an abstract definition which would be in all respects accurate. In the case of Nashville v. Linck, 80 Tenn., 499, it was held that a general clause in the charter of a municipal corporation may confer authority to pass ordinances on subjects not named among the specific powers of the corporation. The particular clauses of the statute, under which doubtless the authority was sought to be exercised in this case, are in these words: "To license, tax and regulate hackmen, draymen, omnibus drivers, baggage wagon drivers, and drivers of vehicles of every kind, and all others pursuing like occupations, with or without vehicles, and prescribe their compensation, and make it a misdemeanor for any person to attempt to defraud them of any legal charge for services rendered; and to regulate stands for vehicles, and regulate, license and restrain runners for railroads, vehicles of any kind, hotels, public houses of any kind, or other business of any kind."

"To make all needful and proper regulations concerning bakers, butchers, hotel keepers, theatres and other public houses; also all draymen, horse drivers, water carriers, omnibus drivers, hack drivers

and drivers of baggage wagons and other vehicles," etc. The caption to the ordinance in question is to this effect, that it shall be unlawful for any person, firm or corporation in the city of Paris, to run or keep for public use or hire any of the vehicles hereinafter mentioned without having first obtained a license therefor and paid the license prescribed by this ordinance. That it was within the general power by proper ordinance to have passed a valid act fixing license fee on such occupations and on the vehicles therein referred to, there can be no doubt. Allerton v. City of Chicago, 6 Fed. Rep., 555; Johnson v. Philadelphia, 60 Pa. St., 445; Ferry Co. v. East St. Louis, 107 U. S., 365; City of St. Louis v. Weitzel, 31 S. W., 1045; City Council v. Pepper, 1 Rich. (S. C.), Law, 364; Browne v. Mobile, 122 Ala., 159, 25 So., 223; U. S. Distilling Co. v. Chicago, 112 Ill., 19; Munn v. Illinois, 94 U. S., 113; City of Covington v. Wood, 33 S. W., 84; Oil City v. Oil City Trust Co., 11 Pa. Co. Ct. Rep., 350. It is appellant's contention that the charter of said city of Paris does not authorize and empower the city council to enact an ordinance regulating the *owners* and keepers of such vehicles and that section 162 above quoted under which such authority is claimed clearly applies to the *drivers* of the vehicles referred to; whereas, the ordinance applies to the owners and keepers of same. We think that the language of the particular section of the charter to license, tax and regulate hackmen, draymen, omnibus drivers, wagon drivers and drivers of vehicles of every kind and all others pursuing like occupations, is broad enough to include both the owners and keepers of same where such vehicles are actually driven by another as well as to reach the owners of such vehicles who drive same, and that the construction sought to be placed upon the charter by relator is too restrictive, and to give it his construction would do violence to the clear intent of the Legislature. Again, if this were in doubt, under section 6 of the charter and the other sections quoted above, the city of Paris would have, under its general provisions, the right to pass such ordinances.

3. Finally, it is claimed that the ordinance is unreasonable in that the taxes are greatly in excess of what would be reasonable and necessary to regulate the business affected. This issue was made a matter of dispute in the court below and on hearing of the evidence, which was to some extent conflicting and to some extent uncertain, the trial court found against relator. We are inclined to think, under the facts as shown by the record, that the trial court is correct in his conclusion and his finding against relator on this issue is sustained by the record. If, however, we were not of this opinion, unless it quite clearly appeared that his conclusions were inaccurate, we should scarcely feel like overturning the judgment of the court below on a question of fact. The following summary of the evidence given in the brief of the city is substantially correct: "The city

secretary testifies that the city had expended $35 for books, blanks and registers; that he had issued 103 licenses and collected $616.25; that forty vehicles are required to have stands; that he performed the duties of assessor and collector,. as well as city secretary, and had no assistant, and his duties were such that they required all of his time; that he was required to issue licenses, keep in a register a description of vehicles and also a register of drivers and supply numbers and also to inspect and check lists of vehicles. That ordinance had only been in effect a short time and that neither time, labor or expense of enforcing same could be determined, but was conjectural; that he would be compelled to have some assistance to properly perform the duties required of him under the ordinance; that such an assistant would have to be paid a salary of $50 to $75 per month. The chief of police testified that to properly enforce the ordinance it would require - two additional men; that it would require a man at each of the two depots both night and day; that the duties imposed on him by the ordinance would require a constant inspection on his part and on the part of the police department to enforce it; that he has only four regular policemen, who are stationed in the business portion of town; that he had not asked for any additional policemen, but intended to do so; that policemen receive a salary of $60 per month. J. L. Shankin, a former marshal of the city, testified that he enforced a similar ordinance when he was marshal and that it did not require extra men to enforce it; that his police force consisted of six regular men, a chief of police and a marshal; that he did not know how many men the city had now or to what extent their duties had been increased since he was marshal; that in his opinion it would not be necessary to add any additional cost to the police department to enforce it, as all policemen were paid a salary, and the ordinance could be enforced while looking after their other duties." In the case of Ex parte Gregory, 20 Texas Cr. App., 210, it was held that the amount to be exacted as license is not to be solely confined to the expense of issuing it, but that a reasonable compensation may be charged for the additional expense of municipal supervision over the particular business or vocation. It was stated in the case of Brown v. Galveston, 75 S. W., 497, that "the expense of issuing a license and placing a number upon a carriage is only the preparation for exercising the police power over the use of the vehicle, the cost of which could not be foreseen." In the cases above cited, license fees quite as high as these herein provided for were upheld as reasonable.

We have carefully considered all the matters urged by relator which were put with much force and ingenuity, but we think they are clearly met in the admirable brief filed on behalf of the city where the authorities from which we have quoted above are grouped and collated and which in every point, in our opinion, sustain and

uphold the decision of the court below.   Finding no error in the proceedings of the court below, the judgment is in all things affirmed.

*Affirmed.*

Davidson, Presiding Judge, concurs.

Thomas B. Love, Special Judge, concurs.