## Ex Parte B. F. Wade.

### No. 1847. Decided April 3, 1912.

**1.—City Charter and Ordinance—Butcher—Peddler—Occupation Tax—License—Police Regulation.**

Where a city has been incorporated under Chapter 1, Title 18, Revised Civil Statutes, and has thereunder passed an ordinance providing for a license tax for butchers selling meat in the streets of said city limits, said license tax is not an occupation tax on an occupation not taxed by the state, but is a police regulation and, being otherwise reasonable, is valid.

**2.—Same—Occupation Tax—Police Power.**

There is a distinction between an occupation tax and an ordinance regulating the business of butchers or any other legal business subject to the police power of the State and city, and an ordinance requiring one to take out a license and pay a given fee therefor, where the fee charged is no more than sufficient to cover the expenses incident to a proper and necessary inspection of the things sought to be regulated, is authorized, and not an occupation tax. Following Ex parte Cramer, 62 Texas Crim. Rep., 11, and other cases.

**3.—Same—Case Stated—Valid Ordinance—License Tax.**

Where a city was incorporated under the general incorporation law, Chapter 1, Title 18, Revised Civil Statutes, and thereunder passed an ordinance providing for a license tax for butchers, etc., and the evidence showed that said ordinance was fully authorized under Chapter 4, Title 18, Revised Civil Statutes, and Articles 422, 428, 437 and 448, Revised Civil Statutes, and the evidence showed that relator as a butcher sold meat from the wagon on the streets within the limits of said city without paying a license tax therefor, as provided by said ordinance which assessed a reasonable fee upon said business. Held that said ordinance is valid and relator amenable to the prosecution thereunder.

Appeal from the County Court of Nolan County in vacation. Hon. John J. Ford, presiding.

Appeal from a habeas corpus proceeding denying release under warrant of arrest under a city ordinance requiring a license tax on all persons peddling meats in an incorporated city under the general law.

The opinion states the case.

*J. F. Eidson,* for relator.—On question of invalidity of ordinance: Ex parte Hicks, 40 Texas Crim. Rep., 28; Hoefling v. City of San Antonio, 20 S. W. Rep., 85; Laredo v. Loury, 20 S. W. Rep., 89.

*A. W. Christian,* for respondent.—Cited cases in opinion.

HARPER, JUDGE.—Relator was arrested on a warrant issued on complaint, charging him with violating the ordinance of the city of Sweetwater, in that he was engaged in butchering and selling meats in said city without having obtained a license so to do under the ordinances. He sued out a writ of habeas corpus before Hon. John J. Ford, county judge of Nolan County, who, upon a hearing, remanded relator to the custody of the city marshal of Sweetwater, from which judgment he prosecutes this appeal.

The statement of facts reads as follows: "That relator is a butcher, engaged in the buying, slaughtering and sale of meat in the city of Sweetwater, Texas. That he buys cattle from farmers and ranchmen, kills and dresses same on farm or ranch where bought, brings them into the city of Sweetwater, Texas, in his wagon, cuts said meat up on the wagon on the streets of city and sells same in such quantities as may suit the purchaser.

"That at the time alleged in complaint against him for violation of said city ordinance he was engaged in driving his wagon in and upon the streets of said city, and from house to house selling meat as aforesaid, which said meat was not raised by him, relator, nor by any member of his family, and that he took orders, cutting and weighing said meat and delivering same at the same time and place, and that he had been so butchering, selling and delivering meat in said city for more than two years prior to his arrest for violation of said ordinance. That since the passage and effectiveness of said city

ordinance, under which he is prosecuted, he has never paid any occupation tax to the city of Sweetwater, nor has he paid any license tax, procured a receipt therefor, and a license to so sell said meat in said city, as provided for under the terms and provisions of said ordinance, notwithstanding he has been frequently, and prior to his arrest hereunder, been called upon by the officers of said city to pay the said license tax as in said ordinance provided for.

"That such license tax, as provided for under said ordinance, has no application to butchers who have a fixed place of business in the said city of Sweetwater and who do not sell meat from house to house and upon the streets of the said city of Sweetwater, but sell only from their said fixed places of business in said city.

"That the following is the ordinance under and by virtue of which such prosecution was instituted in the city court of the city of Sweetwater, Texas, viz.:

"An Ordinance Defining Peddlers, And Fixing a License Tax For, The Pursuing of the Business of Peddling within the City of Sweetwater:

Section 1. That each and every person who shall go from house to house, or in any manner, sell or offer for sale, within the corporate limits of the city of Sweetwater any goods, wares, meat, fruit, vegetables, country produce, or other merchandise of any character whatsoever, on any street, alley or other public place or thoroughfare within said limits, where such was not produced, or raised by such person, or persons, or by their families from any vehicle, wagon or other conveyance, are here defined to be peddlers, and as such shall pay to the city of Sweetwater a license tax as follows: Twenty-five dollars ($25) on each first wagon, and fifteen dollars ($15) on each additional wagon, vehicle or other conveyance, owned by the same person, said license tax shall be an annual tax, and shall be payable in advance before any such person, or persons, shall engage in the sale, or offering for sale, of any such goods, wares, meats, fruits, vegetables, country produce or other merchandise, as specified herein.

Section 2. That each and every person who may desire to engage in such business as a peddler, as provided for herein, and under preceding section hereof, shall pay said tax to the city collector of the city of Sweetwater, whereupon said collector shall issue to such person a receipt therefor, which receipt shall be a license tax receipt and shall authorize such person, or persons, to pursue such business within said city for the ensuing year, from the date of such tax, which said tax is here levied, and assessed as an annual tax as aforesaid.

Section 3. That upon the payment of said license tax, and procuring receipt therefor, as hereinbefore provided, it shall be the duty of the city collector to furnish such person with two numbers, corresponding with the number of the receipt so issued to such person by said collector, which shall be at least four inches high, which said numbers shall be placed securely one upon each side of said vehicle, wagon

or other conveyance, by such person so securing the same, in such place as may be readily seen, and such numbers shall be so furnished at the city's expense; provided, however, such person may furnish such numbers himself, but they shall conform to the requirements of this ordinance.

Section 4. Each and every person who shall comply with the preceding section of this ordinance, and shall sell, or offer for sale, any of the articles of merchandise as specified shall at all times keep the same in a clean and sanitary condition, and shall also keep their wagons, vehicles or other conveyance, in a clean and sanitary condition, and they shall not sell, or offer for sale, any unsound or unwholesome articles of merchandise, nor shall they give, or make, any false weights or measures of any of the various articles of merchandise as specified, and covered, under section 1 of this ordinance.

Section 5. It is here made the duty of said city collector to procure, and to keep, a well bound book wherein all license taxes, required to be paid under the provisions of this ordinance, and which are paid, and to enter therein the names of each person applying for, and paying such license tax, together with the date of the issuance, when the same expires, with the number such license carries, and to make and enter such other and further entries therein as will fully identify such license, and to whom issued, and it is here made the duty of the city marshal, and all other peace officers of the city, to diligently look into the regulations under this ordinance, and to make report of each and every violation which may come to his notice to the city attorney, or other prosecuting officer of the city, to the end that each and every provision of this ordinance may be fully observed.

Section 6. That any person who shall engage in the sale of any of the articles of merchandise as specified in this ordinance without having first paid such tax and procured such license tax, as herein provided, or who shall fail to procure said numbers and place the same on his wagon, vehicle or other conveyance, or who shall fail to keep his wagon, vehicle or other conveyance in a clean and sanitary condition, or who shall sell or offer for sale any unsound or unwholesome articles of merchandise, or who shall give, or make, any false weights or measures, of the various articles of merchandise as contemplated, and provided for, under the provisions of this ordinance, shall upon conviction be deemed guilty of a misdemeanor, and fined in the sum of ten ($10) dollars; provided, that the city shall have the right to collect any license tax as herein fixed, and imposed, whenever the same may become due as herein provided, by suit in any court having jurisdiction over such amount.

Section 7. Each and every day's engaging in the business of peddling, as defined under this ordinance, without the payment of the tax due thereon, and procuring a receipt, or license, therefor, and each and every day's failure to comply with any of the other provisions of this ordinance, shall constitute a separate offense, and the person so

guilty of such violation, or failing to comply with the provisions hereof, shall upon conviction be punished therefor as hereinbefore provided; provided, that the court trying said cause shall have the right and power upon conviction of any person for violation of any of the provisions of this ordinance to decree, and to make the same a part of the judgment in such cause, a forfeiture of such license as such person may have procured hereunder, however, in the event of such forfeiture of license no part of such license tax as may have been so paid shall be refunded to such person, and no further license shall be issued to such person for the remaining period of such license year under this ordinance."

It was also admitted that the city of Sweetwater was at the time of the passage of said ordinance incorporated under chapter 1, title 18, of the Revised Statutes of Texas.

Relator's assignments of error are: (1) That the court erred in not discharging relator herein; and (2) that the court erred in its judgment remanding relator to the custody of the marshal. Under these two assignments he presents but one proposition, it being that what is termed a license fee as imposed by the ordinance is in effect an occupation tax, and that the city of Sweetwater has no authority to levy or collect an occupation tax on any occupation not taxed by the State.

The question here presented has been before this court a number of times, the distinction between license fees and occupation taxes being drawn in Ex parte Gregory, 20 Texas Crim. App., 212. That decision has always been followed in this court. (See Ex parte Denny, 59 Texas Crim. Rep., 579, 129 S. W. Rep., 1115, and cases there cited. We have recently had occasion to review this question at length in the case of Ex parte Cramer, 62 Texas Crim. Rep., 11, 136 S. W. Rep., 61, and we held in that case that there was a distinction between an occupation tax and an ordinance regulating any business subject to the police power of the State and city, and that an ordinance requiring one to take out a license and pay a given fee therefor, where the fee charged is no more than sufficient to cover the expenses incident to a proper and necessary inspection of the things sought to be regulated is authorized, and not an occupation tax. In this case it is not contended that the fee fixed is exorbitant, or will be more than will be necessary to pay the costs of issuing, enforcement and inspection. A long list of authorities is cited in that case, which are here referred to. Article 422 of the Revised Statutes provides that an incorporated city may "establish or erect, or cause to be established or erected market houses, designate, control and regulate market places and privileges, inspect and determine the mode of inspecting meat, fish, vegetables and all produce and every article and thing therein brought for sale," and under article 428 it is authorized to license, tax and regulate and suppress and prevent hawkers and peddlers, and in article 437 it is authorized to make such rules

and regulations in relation to butchers as it may deem proper, and to regulate the inspection of beef, etc., and by article 448 it is expressly provided that a city may do "all acts and make all regulations which may be necessary or expedient for the promotion of health or the suppression of disease." In chapter 4, of title 18, will be found ample authority for the city to enact an ordinance of the character and kind adopted by the city of Sweetwater. Counsel representing the city of Sweetwater has filed an able brief, from which we copy the following:

"It can readily be seen that by the sale of decayed or otherwise unwholesome meats, fruits and vegetables, or the keeping of same in an unsanitary condition, the sale of and offering for sale of meat, fruits and vegetables can affect the public health or comfort or become a nuisance.

"The granting of the power to license, tax and regulate, or suppress and prevent, hawkers, peddlers, etc., shows in itself the opinion of the Texas Legislature that such occupations require regulation and supervision. The opinion of the Legislature that the sale of meat and vegetables should be controlled and regulated in the interest of the public is evidenced by article 422 of title 18 of the Revised Statutes, which reads as follows:

" '(The city council shall have power) to establish or erect or cause to be established or erected, markets and market houses, designate, control and regulate market places and privileges, inspect and determine the mode of inspecting meat, fish, vegetables and all produce and every article and thing therein brought for sale.'

"That this opinion of the Legislature is not confined to the sale of meats, fruits and vegetables in markets, but applies as well to the sale of such articles in peddlers' wagons, is evidenced by these words of the Act of the Legislature creating the State Board of Health and providing for its organization, found on page 344 of the Acts of 1909:

" 'Provided, that said Texas State Board of Health shall prepare and adopt at such time as they may deem proper and expedient an Advisory Supplement to such Sanitary Code for Texas which shall contain rules and regulations on the following subjects:

" '(7) Rules and regulations to govern and control the conduct and operation of markets, peddlers' wagons, and all other places and methods of exposure for sale of meats, fish, poultry, game, fruits, vegetables and all perishable articles of food exposed for sale, and to regulate the time and method of such exposure, and to prescribe and limit methods for the preservation of such articles of food, and to prohibit the doing of any act or the use of any method with respect thereto, which said board shall deem prejudicial to the public health.'

"It is thus seen to be within the public policy of the State of Texas to regulate and control the sale of meats, fruits and vegetables from markets and peddlers' wagons, and the passage of an ordinance providing for the licensing and regulation of the sale of meats, fruits

and vegetables from peddlers' wagons is a valid exercise of the police powers of the city.

" 'It is a generally received doctrine that the power granted to a municipality to regulate or to prohibit includes the power to license as a means to those ends.' 25 Cyc., 602.

" 'Any occupation which is of such a nature and character as to be liable to create a nuisance, and thus become an annoyance and inconvenience to the general public, is a legitimate subject for police regulation, if it is reasonable. The right to regulate exists where the business or occupation is legitimate in itself, but a certain degree of restraint is necessary in the interest of public health, morals and general welfare.' Smith's Municipal Corporations, vol. 2, page 1385, article 1324.

· " 'It is due process of law for the State, as a means of enforcement of its police power, to require licenses and · privilege taxes of those engaging in business affecting the public health, morals, comfort or safety . . . peddlers, and others, may be required to obtain licenses or pay privilege taxes.' 8 Cyc., 1115, citing Ex parte Moser, 8 Ohio Cir. Ct., 324, and Com. v. Shaffer, 128 Pa. St., 575, 18 Atl., 390.

" 'The most important of police powers is that of caring for the health of a community, and that is inherent in the municipality and may be exercised whether expressly granted or not.' Smith's Municipal Corporations, vol. 2, page 1382.

" 'One of the methods employed in the exercise of the police power vested in municipalities is that of regulation of the business, vocation or employment in which persons and corporations engage in the corporate limits. Any occupation which is of such a nature and character as to be liable to create a nuisance, and thus become an annoyance and inconvenience to the general public, is a legitimate subject for police regulation, if it is reasonable. The right to regulate exists where the business or occupation is legal in itself, but where a certain degree of restraint is necessary in the interest of public health, morals and general welfare.' Idem., page 1385, article 1324.

" 'The regulation of a business or occupation is usually, and most effectually, accomplished by means of issuing a license provided for by ordinance, which is subject to cancellation for a violation of the terms and conditions.' Idem., page 1387, article 1327.

"The ordinance in question is reasonable.

"No evidence was introduced to show that the ordinance was unreasonable and its reasonableness has not been questioned, but reasonableness is an essential of all regulative ordinances and this ordinance is clearly reasonable. It levies upon the peddlers of meats, fruits, vegetables and other wares an annual license tax of $25 on the first wagon and $15 on each additional wagon. A little more than $2 per month for the first wagon and the sum of $1.25 per month for each additional wagon is clearly a reasonable amount to pay for such a privilege and since the number of those engaged in

such business is limited it is no more than sufficient to cover the expense of issuing the license and the expenses incurred in the enforcement of the necessary inspections, superintendence and regulation.

"License fees of such an amount are not unusual. Numerous cases can be found sustaining license fees of this and greater amounts. In the case of Davis v. Mayor and Council of Macon, 64 Ga., 128, 37 Am. Rep., 60, the court sustained the validity of an ordinance of the city of Macon to the effect that 'Each person or firm (farmers selling their own produce excepted) retailing fresh or butcher's meat in the city, whether from stalls, stores, or by peddling the same on the streets, shall pay a license of $50,' which was an annual license tax. In the case of City of St. Louis v. Bowler, 94 Mo., 630, 7 S. W., 434, the court sustained the validity of an ordinance of the City of St. Louis exacting a license of $25 on persons selling sewing machines as agents. This ordinance was passed under the provisions of the St. Louis charter authorizing the city authorities to 'license, tax and regulate agents, real estate agents and brokers, financial agents and brokers, mercantile agents, insurance agents and all other business, trades, avocations or professions whatsoever; to license, tax and regulate or suppress all occupations, professions and trades not heretofore enumerated, of whatever name and character.'

"'A fee sufficient to cover the expense of issuing the license and to pay the expenses which may be incurred in the enforcement of such police inspections or superintendence, as may be lawfully exercised over the business may be required. If the fee required is not plainly unreasonable, the courts ought not to interfere with the discretion of the municipal authorities fixing it; and unless the contrary appears on the face of the ordinance requiring it, they should presume it to be reasonable.' Smith's Municipal Corporations, vol. 2, page 1405, article 1347."

The ordinance having been passed as a police regulation, and being reasonable in its terms, the judgment is affirmed.

*Affirmed.*