**MIMS et al. v. CITY OF FORT WORTH et al.**
No. 12836.

Court of Civil Appeals of Texas. Fort
Worth.
May 20, 1933.

See, also, 52 S.W.(2d) 931.

John O. Ragan and Mike E. Smith, both of
Forth Worth, for appellants.

R. E. Rouer, George C. Kemble, J. M. Floyd,
and R. B. Young, Jr., all of Fort Worth, for
appellees.

DUNKLIN, Justice.

This appeal is from an order of the district
court of Tarrant county refusing plaintiffs'
application for a temporary writ of injunc-
tion to restrain the enforcement of an ordi-
nance of the city of Fort Worth. Plaintiffs
in the suit were A. F. Mims and thirty oth-
ers; and the city of Fort Worth and Dr. A.
H. Flickwir, director of public health and wel-
fare, were defendants.

The suit was for a permanent writ of injunction restraining the enforcement of the ordinance, and in plaintiffs' petition it was alleged that each of them was a resident and inhabitant of the defendant city where he is a property owner and taxpayer and

"2. That each of the plaintiffs herein, except the plaintiffs Mims, Barns and Moen, are the owners of one truck each, and the said Mims, Barns, and Moen, the owners of two trucks each; that all of said trucks were and are being used by each of the plaintiffs for the purpose of transporting and delivering fruits and vegetables and selling the same. That the plaintiffs at the time of the passage of the ordinance herein complained of were, and are now, actively engaged in the business of buying, transporting and selling fruits and vegetables to dealers, such as grocery men, restaurants, cafes, hotels, and individuals, and dependent upon such occupation or calling for a livelihood for themselves and families. That each of the plaintiffs, at the times herein mentioned, had built up a substantial business and good will among their customers, which was, and is, very valuable to such an extent that if they are compelled to comply with and obey the requirements of the ordinance complained of herein, they will each lose their said business, or the same will be greatly injured and damaged, and they will be compelled to cease operating their said businesses, or to conduct the same under heavy burdens and requirements to such an extent that they will sustain serious injury and loss as herein complained of.

"3. That plaintiffs herein, and each of them, operate by driving their trucks into the country, or to other market places in Tarrant County and other counties and places in the state of Texas, and purchasing their fruits and vegetables and transporting the same to the City of Fort Worth for sale. Plaintiffs each from time to time rent space in a market house or place in said City which they occupy and from which they sell for a part of each day, being permitted by the rules of the market to sell from four o'clock a. m. until nine-thirty o'clock a. m., and from five o'clock p. m. until nine o'clock p. m., of each day, during which time they sell and deliver fruits and vegetables to their said customers.

"4. That there are numerous other individuals and firms engaged in buying and selling fruits and vegetables in the City of Fort Worth, such as farmers, gardeners and growers of fruits and vegetables, who likewise are privileged to occupy space at the market and to vend and deliver their said produce in the same manner and under the same conditions and circumstances as these plaintiffs have done and are doing, and who are not now and will not be required to pay any tax or fee, or submit to any of the restrictions and burdens of said ordinance."

Attached to their petition is a copy of the city ordinance which reads as follows:

"Ordinance No. 1736.

"An ordinance to provide for licensing and regulating persons, firms and corporations to engage in selling fruits and vegetables at wholesale within the corporate limits of the city of Fort Worth, and the producers of fruits and vegetables, providing for the issuance of licenses and a fee therefor, defining terms, providing for the appointment and duties of inspectors and enforcing officers. Prohibiting the superseding thereof by other ordinances. Providing for the display of licenses, fixing penalties and describing operation and effect.

"Whereas, fruits and vegetables are now being sold at wholesale in the City of Fort Worth which are inferior in quality, unfit for human consumption, mixed in grade, and sold as of a higher grade, and,

"Whereas, fruits and vegetables are stored, kept, packed and sold in wholesale establishments which are kept in unsanitary conditions, and, therefore, dangerous to the health of the public; and

"Whereas, in order to protect the health of the citizens of the City of Fort Worth, and prevent the citizens thereof from being defrauded, it is necessary to regulate the sale of said fruits and vegetables and inspect and regulate establishments where such fruits and vegetables are kept, stored and sold.

"Therefore, be it ordained by the City Council of the City of Fort Worth, Texas, as follows:

"Section I. It shall be unlawful for any person, firm or corporation to maintain and operate an establishment for sale at wholesale of fruits and vegetables, or for the wholesale distribution of fruits and vegetables within the corporate limits of the City of Fort Worth, Texas, without first obtaining a license therefor.

"Section II. Every person, firm or corporation, before opening, maintaining, and/or operating such an establishment for the purpose stated in Section I, shall make application for each establishment maintained and operated by him, or it, upon a blank to be furnished by the Director of Public Health and Welfare, and in which application the applicant shall give the following information: Address, number of establishments maintained and operated, nature of business, method of distribution used, whether it be selling direct from the store room, railroad car, wagon, truck or other vehicle, or from a vacant lot or stand, or otherwise.

"Section III. Upon filing an application to operate an establishment for sale at wholesale of fruits and vegetables properly filled.

out and paying the Director of Public Health and Welfare a license fee of $100.00 for each and every establishment maintained and operated, said Director of Public Health and Welfare shall issue a license or licenses to said applicant to operate said establishment for and during one year from the date of issuance, which said license shall not be transferrable.

"Section IV. All persons offering for sale fruits and/or vegetables grown or produced by such persons shall not be required to pay the license fee provided for, but licenses shall be issued to such persons by the Director of Public Health and Welfare upon satisfactory proof that they have grown or produced the products to be sold and such licenses shall so state.

"Section V. The word 'Establishment' as used in this ordinance shall mean an establishment which is engaged in buying and selling and/or distributing fruits and/or vegetables at wholesale, and shall mean any building, storeroom, freight car, wagon, truck or other vehicle, or any vacant lot or stand, or otherwise, where such fruits and/or vegetables are kept, stored, packed, or offered for sale at wholesale. The word 'Wholesale' as used in this ordinance shall mean any sale other than by the producer to one not the ultimate consumer of an individual unit.

"Section VI. The City Manager of the City of Fort Worth shall appoint an inspector or inspectors, or shall require any inspector or inspectors as are already employed by the City of Fort Worth, to enforce this ordinance. It shall be the duty of such inspector or inspectors regularly to inspect all fruits and vegetables bought and sold, or offered for sale, and to determine whether any of said fruits or vegetables are unfit for human consumption, or whether the same shall have been or shall be misrepresented as to grade, quality or condition.

"Section VII. No other license issued by the City of Fort Worth shall be deemed in any way to supersede this ordinance or to exempt any person, firm or corporation coming under the classification of this ordinance from taking out a license as provided for by this ordinance.

"Section VIII. Every person, firm or corporation obtaining such license under the provisions of this ordinance shall keep such license displayed in the establishment for which it was issued.

"Section IX. Any person, firm or corporation which shall hereafter operate such establishment as defined in this ordinance without first having obtained license so to do, shall upon conviction be fined not less than Five Dollars and not more than Two Hundred Dollars, and every day which said person, firm or corporation shall engage in such business without such license shall be and constitute a separate offense.

"Section X. Any person, firm or corporation violating the provisions of Section VIII hereof upon conviction, shall be fined not less than Five Dollars nor more than Twenty-five Dollars.

"Section XI. In case any Section of this ordinance shall hereafter be declared null, void or inoperative, the other sections shall nevertheless remain in full force and effect.

"Section XII. This ordinance shall not be construed to repeal any of the health, sanitary or food ordinances of the City of Fort Worth, but shall be cumulative thereof.

"Section XIII. This ordinance shall take effect and be in full force and effect from and after the date of its passage and publication as required by law."

The validity of the ordinance was challenged as being in violation of the Fourteenth Amendment of the Federal Constitution forbidding the enactment of laws abridging the privileges and immunities of citizens of the United States, the denial of equal protection of the law, the deprivation of property without due process of law; also as being violative of section 3, article 1 of the Constitution of the state of Texas guaranteeing equal rights to the citizens. It was alleged that the discrimination in favor of growers and producers selling vegetables was unreasonable and unnecessary, and especially so since by reason of Ordinance No. 1271 already passed by the city, and rules and regulations adopted thereunder, ample provisions have been made for the regulation and supervision of plaintiffs' business; further that, if the fee required to be paid by plaintiffs under the provisions of the ordinance be considered an occupation tax, then the ordinance would be invalid because of the fact that the state has not provided for such an occupation tax, in the absence of which the city would be forbidden to collect the same by reason of article 8, § 1, of the State Constitution, providing that no city can levy an occupation tax in the absence of a statute of the state providing such a tax; and since by section 18, chapter 25, of the charter of the city of Fort Worth, it could not in any event levy an occupation tax of more than one-half of the state tax.

The ordinance was further challenged on the ground that its caption purports to regulate only the sale of fruits and vegetables by wholesale, whereas in the body of the ordinance buying of those commodities is also prohibited.

It was further alleged that the term "establishment" as used in the ordinance and purported definition thereof, and the term "individual unit" are both of uncertain and indefinite meaning; and further that the entire ordinance is unnecessary as a police regulation. There were further allegations that the enforcement of the ordinance against the plaintiffs will result in great financial loss to them.

Defendant filed an answer to the petition embodying numerous objections thereto and denying the allegations that the ordinance was unreasonable and unnecessary for the protection of the public health of the city; also denying that it was an unjust and unreasonable discrimination in favor of the growers and producers of fruits and vegetables, and that its provisions had been fully covered by ordinance No. 1271.

Plaintiffs' petition and also the defendant's answer were duly verified.

Ordinance No. 1271, mentioned in plaintiffs' pleadings, is designated the "Sanitary Code" of the city, and includes twelve articles covering numerous subjects such as quarantine, isolation of persons with communicable diseases, vital statistics, cemeteries, numerous regulations of dairies, testing milk, etc. And sections 1 and 2 of article 3 of that ordinance read as follows:

"Section 1. The term 'food establishment' shall be taken to mean restaurants, cafes, hotel dining rooms, soft drink stands, grocery stores, meat markets, hamburger stands, ice cream wagons, or any place or places where food is manufactured, sold or offered for sale, given in exchange, or given away for use as food or furnished for human consumption.

"Section 2. It shall be unlawful for any person or persons, firm or firms, corporation or corporations, to operate or do business under terms of this article without first making application to the Director of the Department of Public Health and Welfare for a permit to operate or do business under the terms of this ordinance within the City of Fort Worth."

Section 16 of the same article authorizes the director of public health and welfare to inspect any and all things offered for sale and used as food or drink and forbidding the sale of any articles which that officer may find to be unfit for human consumption.

Sections 1 and 2 of article 12 read as follows:

"Any person violating any of the provisions of this ordinance, or any person failing or refusing to do any of the things therein required shall be deemed guilty of a misdemeanor, and upon conviction thereof shall be punished by a fine of not more than two hundred ($200.00) dollars; provided each day's violation or each day's failure to comply with any of the provisions of this ordinance shall constitute a separate offense.

"2. The purpose of this ordinance is hereby declared to be a police regulation designed and intended for the preservation of the public peace, health, and safety of the citizens of the City of Fort Worth."

The order of court denying a temporary injunction recites that the conclusion there reached was upon "a full and fair hearing on the pleadings and ordinance 1271." No other evidence was offered.

The following is section 1 of chapter 2 of the special charter of the city of Fort Worth:

"The City of Fort Worth may license and regulate persons, corporations and associations engaged in any business, occupation, profession or trade; may define, prohibit, abate, suppress and prevent all things detrimental to the health, morals, comforts, safety, convenience and welfare of the inhabitants of the City, and all nuisances and cause thereof; * * * may make and enforce local police, health, sanitary and other regulations; and may pass such ordinances as may be expedient for maintaining and promoting the peace, good government and welfore of the City, and for the performance of the functions thereof."

Section 18 of chapter 25 of the charter confers upon the city council the right to levy an occupation tax not to exceed one-half of any occupation tax required by the state. But that section concludes with this language:

"Provided, further, that nothing herein shall be construed to prevent the City, in the use of its police power, from prescribing license fees or police tax necessary and proper to enable the City to exercise proper police surveillance over all persons, firms or corporations, or calling subject to same."

■ Ordinance No. 1736 shows upon its face to be one requiring the procurement of a license and not an occupation tax, and may be properly classed as a police regulation authorized by section 1 of chapter 2 of the charter.

■ Nor can we say that that ordinance was rendered unnecessary by reason of the provisions of Ordinance No. 1271, since the latter ordinance evidently was intended to apply to retail dealers while the ordinance in controversy here is limited to wholesalers; and we overrule the further contention that the latter ordinance was unreasonable in its application to the plaintiffs and the business conducted by them, especially since the unreasonableness alleged does not appear on its face, and no evidence was offered by the plaintiffs to show that it was unreasonable and thus to overcome the burden of proof cast upon them by the verified answer of the defendant denying plaintiffs' allegation of unreasonableness.

■■ We conclude further that the ordinance cannot be held to be invalid on the alleged ground that it was an unwarranted discrimination against persons following plaintiffs' occupation while it exempts the growers or producers of fruits and vegetables offering for sale products grown by them in the markets of the city. It is well settled that the constitutional guaranty of equal

rights and privileges to all citizens is not violated by a discrimination in favor of certain classes to the exclusion of other classes, provided there be a reasonable ground for such discrimination.

It is also a rule that the legislative body has the right, in the first instance, to determine whether or not facts or conditions exist warranting such classifications, and the determination of that issue cannot be disturbed in the absence of a clear showing that there is no reasonable basis therefor. We cannot say that it appears from the face of the ordinance now under discussion that the discrimination made between the two different classes of those selling the same product was without sufficient foundation. 19 R. C. L. p. 807, § 113, p. 955, § 255.

In the case of Ex parte Bradshaw, 70 Tex. Cr. R. 166, 159 S. W. 259, the Court of Criminal Appeals of Texas sustained the validity of an ordinance as against the same attack, which prohibited the use of public streets of the city by peddlers for the purpose of selling merchandise or produce but exempting from its operation those offering for sale produce grown by them on their own premises. It was pointed out in the opinion that there were facts which would warrant that discrimination, one of which was that it was a known fact that produce usually peddled are not so fresh or wholesome as those offered by the farmer who has raised them.

In the case of Bruce v. City of Gainesville (Tex. Civ. App.) 183 S. W. 41, 43, an ordinance of the city of Gainesville was attacked on the ground that it was discriminatory. By that ordinance it was made unlawful to use the market square or public streets of the city for the purpose of vending merchandise or produce or other articles for sale, but exempted from its operation persons who offered for sale produce grown by themselves, and in that case this court, speaking through Chief Justice Conner, had this to say:

"It is in effect insisted that the object of the ordinance in question was to confer upon the producing classes an especial privilege, but we cannot say that this was the only object of the ordinance. It is admitted that the city has such police powers as is necessary to protect the life, health, and safe-being of its citizens, and it may be well said that the object of the ordinance was to afford citizens of the city of Gainesville an opportunity at all times to procure fruits, vegetables, and farm products generally, fresh from the soil, and to exclude stale vegetables and other deteriorated farm products secured and exhibited by nonproducers."

The decision of our Court of Criminal Appeals in the case of Ex parte Hogg, 70 Tex. Cr. R. 161, 156 S. W. 931, was to the same effect.

In the case of Lossing v. Hughes (Tex. Civ. App.) 244 S. W. 556, it was held that the state truck law was unconstitutional because it exempted from its requirements those who operate trucks for agricultural purposes; the court holding that by reason of that discrimination there was a denial of the equal protection of the law.

In Jackson v. State, 55 Tex. Cr. R. 557, 117 S. W. 818, the Court of Criminal Appeals held that a statute regulating barbers by exempting from its operation students of the State University and other schools in towns having a population of less than 1,000 inhabitants, who elected to work their way through school by serving as barbers, was unconstitutional because of those exemptions. For the same reasons, in the case of Rainey v. State, 41 Tex. Cr. R. 254, 53 S. W. 882, 96 Am. St. Rep. 786, the Court of Criminal Appeals held invalid an act of the Legislature requiring occupation tax of cotton buyers but excluding merchants who were also engaged in buying cotton. To a like effect was the case of Davis v. Holland (Tex. Civ. App.) 168 S. W. 11.

We believe that all of those cases are distinguishable from this case on the facts. We believe further that the same can be said with reference to other decisions in other jurisdictions, but, whether or not we are correct in this conclusion, we believe that the law is settled in this state in accordance with our conclusions heretofore expressed.

In the body of the ordinance it is made to apply to persons buying fruits and vegetables at wholesale as well as those selling the same at wholesale. If it be true, as contended by plaintiffs, that such buyers are not embraced in the caption of the ordinance, "as required by law and the city charter," that would not render the ordinance inoperative as against them, since the wholesalers of such produce are embraced in the caption. 19 R. C. L. p. 815, § 120, and p. 816, § 121; article 3, § 35, Texas Constitution.

We overrule the further contention that the definition of the term "establishment" and also the term "individual unit" are of such doubtful meaning as to render the ordinance invalid.

Nor can we say that the license fee fixed by the ordinance was so excessive in amount as to invalidate it, especially in the absence of any testimony to overcome the defendant's verified answer denying all such allegations. Ex parte Cramer, 62 Tex. Cr. R. 11, 136 S. W. 61, 36 L. R. A. (N. S.) 78, Ann. Cas. 1913C, 588; Ex parte Denny, 59 Tex. Cr. R. 579, 129 S. W. 1115; Kissinger v. Hay, 52 Tex. Civ. App. 295, 113 S. W. 1005; Brown v. City of Galveston, 97 Tex. 1, 75 S. W. 488. Also the following decisions holding license fees to be reasonable: Alma v. Clow, 146 Mich. 443, 109 N. W. 853; license fee $2 a day

for peddlers and hawkers; People v. Baker, 115 Mich. 199, 73 N. W. 115, license fee $25 a month; Wiggins v. Chicago, 68 Ill. 372, license fee $200 a year for auctioneers; Fretwell v. City of Troy, 18 Kan. 271, license fee $5 a day for peddlers.

For the reasons stated, the judgment of the trial court denying the temporary writ of injunction prayed for is affirmed.