

# THE ATTORNEY GENERAL
# OF TEXAS

### AUSTIN 11, TEXAS

**WILL WILSON**
**ATTORNEY GENERAL**

October 8, 1959

Honorable Robert S. Calvert        Opinion No. WW-714
Comptroller of Public Accounts
Capitol Station                    Re: Whether credits provided
Austin, Texas                          for in H.B. 320, 55th
                                       Leg. R.S. 1957, relating
                                       to recovery of Gas Gather-
                                       ing Taxes, may be claimed
                                       against the additional
                                       Franchise Tax and Severance
                                       Beneficiary Tax provided
                                       for by H.B. 11, 3rd C.S.
Dear Mr. Calvert:                      of 56th Leg.

        You have requested an opinion on several questions
relating to Section 3 of House Bill No. 320 of the 55th
Legislature, (1957), which reads as follows:

        "Sec. 3.  Final and valid judgments having
    been obtained against the State of Texas by
    the following named corporations in the follow-
    ing causes for the recovery of Gas Gathering
    Taxes paid to the State of Texas under the
    provisions of Section XXIII of House Bill No.
    285, Chapter 402, Acts of the Fifty-second
    Legislature:

        "El Paso Natural Gas Company, Judgment No.
    101,822, 53rd Judicial District Court of Travis
    County, Texas.  $2,658,935.51

        "Tennessee Gas Transmission Company No. 100,870,
    126th Judicial District Court of Travis County,
    Texas $1,140,906.00

        "United Gas Pipe Line Company No. 104,489,
    126th Judicial District Court of Travis County,
    Texas $1,101,000.34 in lieu of an appropriation
    to pay said judgments, there is granted to each
    of said corporations a credit in the full amount
    of said judgments, according to their tenor,
    effect and reading, exclusive of any interest
    on the principal sum of such judgments either
    prior or subsequent to the respective dates of
    such judgments to be applied against any and all

franchise, gross receipts and occupation taxes
which may become due and payable to the State
of Texas on and after September 1, 1959, by each
said corporation, its successors or assigns,
provided, however, that no credit shall be
applied against that portion of any tax the
revenues from which are dedicated by the Con-
stitution of the State of Texas to a specific
fund.  Such credit may be freely assigned, in
whole or in part, by each said corporation,
its successors or assigns, and any such
successor or assignee may apply such credit
against any such taxes which may be due and
payable by such successor or assignee to the
State of Texas.  No such assignment of credit
shall be effective until the State Comptroller
shall have been furnished a true copy of such
assignment certified to be correct by the assignor
or the assignor's duly authorized officer, agent
or attorney in fact.  The credit granted to each
corporation may be applied against the taxes
specified above over a period not to exceed ten
(10) years from and after September 1, 1959,
and no more than twenty-five per cent (25%) of
the tax credit provided herein owned by any
single person, firm or corporation shall be
applied against taxes by such person, firm or
corporation in any one (1) calendar year.  In
order to apply against taxes the credit granted
hereunder, the owner thereof, contemporaneously
with each tax payment, shall submit to the State
Comptroller a statement sworn to by such owner
or his or its duly authorized officer, agent or
attorney in fact, stating the amount of credit
being applied, the tax against which it is
applied, and that not more than twenty-five per
cent (25%) of the total credit originally owned or
acquired by such owner has been applied against
taxes for the applicable calendar year.  The appli-
cation of a credit against the taxes hereunder
shall constitute a full accord and satisfaction,
to the extent of the sum of the credit, of the
judgment for which the credit is granted, and
the application of such credit against taxes
shall constitute a full accord and satisfaction
of such taxes to the extent of the sum of the
credit applied.  However, in the event that the
manner of accreditation as provided herein is
declared unconstitutional, such companies shall
not be assessed any penalty or interest for taxes
on which credit has been applied, if paid with

reasonable promptness after any such declaration
of unconstitutionality."

Your first question concerns whether or not the
credit specified above may properly be claimed against the
additional Franchise Tax and Severance Beneficiary Tax[1] enacted
by House Bill 11, 3rd Called Session of the 56th Legislature.
The portion of the above quoted act relevant to this question
states:

". . .there is granted. . .a credit. . .
to be applied against any and all franchise,
gross receipts and occupation taxes which
may become due and payable to the State of
Texas on and after September 1, 1959. . . ."

Had the Legislature intended to limit the credit to
taxes in existence at the time of passage of House Bill 320,
it would have used language appropriate to such purpose; since
it used language clearly to the contrary, your first question
must be answered in the affirmative.

Your next question is worded as follows:

"Where the Constitution provides that one-
fourth (1/4th) of the tax collected be deposited
to the Available School Fund, please advise
whether the total tax due for a particular
period can be claimed as a credit or can only
seventy-five (75%) per cent of the tax due be
claimed as a credit."

The portion of Section 3 of House Bill No. 320, 55th
Leg., relevant to this query, provides:

". . .no credit shall be applied against
that portion of any tax the revenues from which
are dedicated by the Constitution of the State
of Texas to a specific fund." (Emphasis added.)

The foregoing proviso in no way limits the amount of
the credit that may be taken in any one year. It merely pro-
vides that no credit may be taken against that portion of any
tax specifically dedicated by the Texas Constitution. Con-

---

[1] The severance beneficiary tax is an occupation tax; con-
sequently there is no question about its being the type of
tax against which credit may be claimed.

sequently, you are advised that where the Constitution dictates that one-fourth (1/4) of a particular tax be deposited to the Available School Fund, credit can only be taken against the remaining 75% of such tax.

Your third inquiry is as follows:

"The Gas Production Tax Law, provided for by Article 7047b, V.C.S. provides that the first purchaser of gas shall withhold the tax from his remittance to the producer and the purchaser in turn remit the tax to the State. Please advise me whether or not a purchaser of gas, who is entitled to credit, can claim credit against the tax which he has withheld from producers of gas provided that he has assigned the proportionate amount of the credit to the individual producers."

Article 7047b, Section 2a, V.A.C.S, (recodified by H.B. 11, 3rd C.S. 56th Leg., as Art. 3.05 of Title 122a, R.C.S.) states:

"(1) The tax herein imposed on the producing of gas shall be the primary liability of the producer as hereinbefore defined, and every person purchasing gas from producer thereof and taking delivery thereof at or near the premises where produced shall collect said tax imposed by this Article from the producer. Every purchaser including the first purchaser and the subsequent purchaser, required to collect any tax under this Article, shall make such collection by deducting and withholding the amount of such tax from any payments made by such purchaser to the producer, and remit same as herein provided. This Section shall not affect any pending lawsuit in the State of Texas or any lease agreement or contract now or that hereafter may be in effect between the State of Texas or any political subdivision thereof and/or the University of Texas and any gas producer.

". . . .

"(3) The tax hereby levied shall be a liability upon the producer, the first purchaser, and/or subsequent purchaser or purchasers as herein provided."

Since the gas production tax is a liability of the producer and the purchaser, either, or both, of them may, within the specified limits, take credit against such tax by following the procedure prescribed in H.B. 320. The credit may be assigned from the purchaser to the producer, or vice-versa, provided, however, that the assignee may not claim credit pursuant to the assignment until a copy thereof, certified to by the assignor, is on file with the Comptroller.

The purchaser may take credit against taxes withheld from payments to the producer by filing the sworn statement required by H.B. 320 with the monthly report required by Art. 7047b, V.A.C.S. Likewise, the producer may take credit by filing the sworn statement with its monthly report. In instances where the producer has properly taken credit against gas production taxes, the purchaser is relieved of the responsibility of remitting such taxes (up to the amount of the credit taken) to the State.[2]

In connection with the foregoing question you also state:

"It is quite common for a purchaser of gas to contract with the producer to reimburse him for any increased taxes on the gas produced. Please advise me whether or not the taxpayer, entitled to credit, can make an assignment to the producer for the amount of the reimbursement and the producer in turn claim credit for the amount of the assignment against his gas production tax."

This question is answered in the preceding discussion; the producer makes claim for the credit by following the above specified procedure.

In your letter dated August 24, 1959, which supplements, your original opinion request, you state that the question has arisen as to whether or not the credit may be claimed against the Railroad Commission Gross Receipts Utility Tax provided for by Article 6060, V.A.C.S. The provisons of this tax are as follows:

"Every gas utility subject to the provisions of this subdivision on or before the first day of

---

[2] The facts justifying the failure to remit should be set forth with the purchasers monthly report; however, this is an administrative detail to be handled by your department.

January and quarterly thereafter, shall file
with the Commission a statement, duly verified
as true and correct by the president, treasurer
or general manager if a company or corporation,
or by the owner or one of them if an individual
or co-partnership, showing the gross receipts
of such utility for the quarter next preceding
or for such portion of said quarterly period as
such utility may have been conducting any business,
and at such time shall pay into the State Treasury
at Austin a sum equal to one-fourth of one per
cent of the gross income received from all
business done by it within this State during
said quarter."

In connection with this tax, Acts 1931, 42nd Leg.,
Reg. Sess., page 111, Ch. 73, § 10, provides:

"That article 6060 of the Revised Civil
Statutes of 1925, except in so far as it
imposes a license fee or tax of one-fourth
of one per cent against persons owning,
operating, or managing pipelines, as pro-
vided in section 2 of article 6050, is here-
by repealed and said fund shall be used for
enforcing the provisions of articles 6050 to
6066, inclusive."

Articles 6050 through 6066, inclusive, provide certain
regulations governing gas utilities. All money collected pur-
suant to Art. 6060 is held in the "gas utility enforcement
fund" to be used for enforcing such regulations.

It is clear that the fee exacted by Article 6060,
V.A.C.S., is a regulatory (as opposed to a revenue) measure.
As stated by Chief Justice Hickman in Hurt v. Cooper, 110 S.W.2d
896 (Tex.Sup.Ct. 1937):

"It is sometimes difficult to determine
whether a given statute should be classed as
a regulatory measure or as a tax measure. The
principle of the distinction generally recognized
is that when, from a consideration of the statute
as a whole, the primary purpose of the fees pro-
vided therein is the raising of the revenue,
then such fees are in fact occupation taxes and
this regardless of the name by which they are
designated. On the other hand, if its primary
purpose appears to be that of regulation then
the fees levied are license fees and not taxes."
(Emphasis added.)

To the same effect see H. Rouw Company v. Texas Citrus Commission, 247 S.W.2d 231 (Tex.Sup.Ct. 1952) and County of Harris v. Shepperd, 291 S.W.2d 721 (Tex.Sup.Ct. 1956). After citing the foregoing principle, the latter case states:

"So-called license taxes are of two kinds. The one is a tax for the purpose of revenue. The other, which is strictly speaking, not a tax at all but merely an exercise of the police power, is a fee imposed for the purpose of regulation." (Emphasis added.)

It has been held that certain fees exacted by cities, for the purpose of regulation, were not occupation taxes within the meaning of Article VIII, Section 1 of the Texas Constitution, which prohibits a city from levying an occupation tax unless a comparable tax is levied by the State. City of Fort Worth v. Gulf Refining Company, et al., 83 S.W.2d 610 (Tex.Sup.Ct. 1935). Ex Parte Denny, 129 S.W. 1115 (Tex.Cr. App. 1910). See also Ex Parte Cramer, 136 S.W. 61 (Tex.Cr. App. 1911) which held that a regulatory fee exacted from an electrician was not an occupation tax within the constitutional prohibition against levying occupation taxes on agricultural or mechanical pursuits.

In view of the foregoing authorities, you are advised that the utilities regulation fee imposed by Article 6060, V.A.C.S., is not a franchise, gross receipts,[3] or occupation tax within the meaning of H.B. 320; consequently, no credit may be taken against the payment thereof.

### SUMMARY

Credits provided for in H.B. 320, 55th Leg., R.S., 1957, may be taken against the additional Franchise Tax and Severance Beneficiary Tax provided for by H.B. 11, 3rd C.S. of the 56th Leg., but may not be taken against

---

[3] Gross receipts taxes have been held to be occupation taxes. Ex Parte Walker, 52 S.W.2d 266, 121 Tex.Cr.R. 145 (1932). The case of Reed v. City of Waco, 223 S.W.2d 247, (Tex.Civ. App. 1949, error refused) held that the measure there in question was a regulatory device, not an occupation tax, even though levied on gross receipts.

the gas utility regulation fee exacted by
Art. 6060, V.A.C.S.

Either the producer or the purchaser
may, within the limits prescribed by H.B. 320,
take credit against the payment of gas pro-
duction taxes by following the procedure set
forth therein.

Yours very truly,

WILL WILSON
Attorney General of Texas

By  Jack N. Price
    Assistant

JNP:cm

APPROVED:

OPINION COMMITTEE:
Geo. P. Blackburn, Chairman

William E. Allen
Lawrence Jones
John Reeves
Fred B. Werkenthin

REVIEWED FOR THE ATTORNEY GENERAL

By:  W. V. GEPPERT