### EX PARTE ALBERT CRAMER.

No. 1083.  Decided March 29, 1911.

**City Charter and Ordinance—Police Power—Occupation Tax—Constitutional Law.**

License and inspection fees levied under the police power of a city are not an occupation tax, and where the ordinances of a city were passed in pursuance to its charter and provided for the inspection of electric lights and a reasonable inspector's fee therefor, the same were not in contravention of article 8, section 1, of the Constitution of Texas, providing that persons engaged in mechanical and agricultural pursuits shall not be required to pay an occupation tax.

From Harris County.

Original application for writ of habeas corpus asking release under a complaint charging a violation of the city ordinance.

The opinion states the case.

*J. V. Meek,* for relator.—On the question of the unconstitutionality of the ordinance: Waters-Pierce Oil Co. v. McElroy, 47 S. W. Rep., 272; Hoefling v. City of San Antonio, 85 Texas, 228, 21 Am. & Eng. Ency. Law, 179; Heller v. City of Alvarado, 1 Texas Civ. App., 409, 20 S. W. Rep., 1003.

*C. E. Lane,* Assistant Attorney-General, for the State.

HARPER, JUDGE.—In this case the relator Albert Cramer was charged in the Corporation Court of the city of Houston by complaint with violating one of the city ordinances of the city of Houston. The complaint alleged "that applicant did unlawfully construct and install and repair and alter electrical work inside and outside of a building,

to wit: fourth floor of the Opera House Building, said building being then and there situated on Fannin street in the city of Houston, Harris County, Texas, without having first made application in writing to the city electrician for a permit for such construction, installation, repair and alteration and wiring, and that said applicant did then and there unlawfully construct and install and repair and alter electrical wiring inside and outside of said building, which said building was then and there situated on Fannin street, Houston, Texas, without first making application in writing to the city electrician for a permit for such construction, installation, repair, alteration and wiring, and the said Albert Cramer did then and there fail and refuse to deposit the inspection fees required therefor, contrary to the ordinance of the city of Houston, and against the peace and dignity of the State."

In his application for a writ of habeas corpus the applicant states: "Your applicant shows that the prosecution against him was begun in the Corporation Court of the city of Houston, and that upon a trial in said court your applicant was fined the sum of $10, as well as costs of prosecution in said court; that from said judgment he appealed to the Criminal District Court of Harris County, when upon trial in said court, on the 4th day of March, 1909, he was again convicted upon the complaint afore described, and fined the sum of $10, as well as cost of said prosecution. Your applicant shows that said prosecution against him was begun under article 110 of the Revised Code of the Ordinances of the city of Houston, which reads as follows: 'No person, or firm or corporation, shall hereafter commence the construction, installation, repair or alteration of any electrical work, either inside or outside of any building, or any wiring inside or outside of any building, without first making application in writing to the city electrician for a permit for such construction, installation, repair, alteration or wiring, and said application shall contain a description by street and number, or by streets, lots or blocks, as may be necessary to locate the same, and shall be accompanied with the inspection fees required to be paid.'

"Your applicant further shows that article 130 of the Revised Code of the Ordinances of the city of Houston reads as follows:

" 'For inspecting incandescent lights, where the wiring is concealed, twenty-five cents per outlet for the first ten outlets; fifteen cents per outlet for all outlets over ten and up to twenty, and ten cents per outlet for all other outlets over twenty,' " etc.

Applicant then alleges that he is a mechanic, and that the ordinances of said city requiring him to take out a license and pay the inspection fees under articles 130 and 110 of the ordinances is in conflict with article 8, section 1, of the Constitution of this State, and that said ordinances are void.

Among other provisions, section 1 of article 8 of the Constitution contains the following: "It (the Legislature) may also tax incomes of both natural persons and corporations, other than municipal, except

that persons engaged in mechanical and agricultural pursuits shall never be required to pay an occupation tax."

The petitioner alleges that he is a mechanic, and this is admitted, and if this assessment is in law an occupation tax, then it is clearly in violation of this provision of the Constitution. But is it an occupation tax for pursuing the occupation of a mechanic, or is it a police regulation for the preservation of the lives and property of the citizens? Electric wires not properly insulated and not properly placed have caused the destruction of vast quantities of property, and many lives have been lost. Under some circumstances electricity is very dangerous, and yet when properly placed, protected and handled, it is one of the most useful powers now known to mankind.

We have given the questions raised in this case much consideration and study, and we think that the best text-writers now all agree that a government has the power to regulate the installation of electrical apparatus and all instruments in public use that are under lax supervision or installation may and do prove dangerous to life and property. The many uses that electricity has been placed can not by us be now enumerated, but in a city we see it on every hand. Cities and towns are held to have the power to establish fire limits and prevent the construction of frame buildings and buildings of other combustible material in said limits as a protection to property. Electrical apparatus improperly installed is far more dangerous to property than such structures. While we think it will be conceded that a city has the right to regulate and supervise the installation of all character of electrical apparatus, on account of the danger incident thereto, under the police power, yet have they the right to assess the necessary cost of such supervision upon the person or mechanic doing the work? This the applicant earnestly insists that it can not do, alleging that it would be a tax upon his occupation as a mechanic. Under the above quoted provision of our Constitution this is a question of some difficulty, but after mature thought we have come to the conclusion, under the authorities we have been able to find, that inspection fees are not a tax in the sense inhibited by our Constitution. Of course, if a city should fix the fees at such a sum as would more than cover the necessary expenses incident to a proper inspection of the work, the ordinance would be improper and the courts would restrain the collection of such sums. But in this instance the facts show that the fees assessed by the city of Houston for the past five years have been inadequate to pay the expenses incident to a proper and necessary inspection in order that the lives and property of its citizens might be protected.

A number of years ago, in the case of Ex parte Gregory, 20 Texas Crim. App., 210, speaking through Judge Willson, this court said:

"In discussing the power of the city under its charter to levy a license tax, the court in that case, referring to the latter portion of section 3, article 3 of title 5 of the city charter, says: 'This portion is believed to authorize the city council to regulate the manner of using

these vehicles, and could not properly be called an occupation tax, for it applies as well to vehicles used for private use as to those kept for the use of the public; and, inasmuch as it is elsewhere provided for taking these articles as personal property, it can hardly be supposed that the Legislature intended to burden the citizen further than as might be necessary to provide for the systematic control and management of this kind of property, with reference to the safety and good order of the public, and incidentally to demand the payment of a sum from each owner to meet the necessary expenses of this regulation.' (Ex parte Gregory, 1 Texas Crim. App., 753.)

"It must be presumed that in framing and enacting this ordinance the council acted with a knowledge of the Constitution of the State, of the city charter, and of the decision of this court in the Gregory case. It must be presumed that the council intended to conform said ordinance to the requirements of those authorities, so as to make it a valid and effective ordinance. This intent on the part of the council, to avoid the objections which obtained against the former ordinance, and to bring the present ordinance within the limits of legitimate legislation, is quite manifest not only from the circumstances under which the new ordinance was framed and enacted, but also from the title, subject matter, provisions and language of the ordinance itself. Evidently it was not intended by this ordinance to levy an occupation tax but a license, under the police and not the taxing power conferred upon the council by the charter. Such being the intention of those who framed and adopted the ordinance, that intention must be respected and considered in its interpretation, and every reasonable intendment must be indulged, in furtherance of the accomplishment of such intention.

"In our judgment there is nothing in the ordinance which requires it to be construed as levying an occupation tax. The general purpose of the ordinance is that expressed in its title; that is, 'to regulate and provide for the licensing of all persons, etc., keeping for public or private use or hire hacks, coaches,' etc. Such regulations pertain strictly to the police and not the taxing power of the corporation, and it was under and by virtue of this police power that the council enacted this ordinance, as is evidenced by the title and body of the ordinance. 'The title and the body of the ordinance may be taken together to give it the necessary certainty to sustain it.' (Martindale v. Palmer, 52 Ind., 411.)

"Therefore it only remains to be considered and determined whether the ordinance, when viewed as a police regulation, and as levying a license, and not an occupation or other tax, is valid. The solution of this question depends upon whether or not the sums demanded are reasonable for the purposes of regulation. It is here to be observed that section 81 of the city charter confers the power not only to regulate the keeping and use of vehicles, but also to impose and collect license taxes thereon.

"In treating upon this subject Mr. Dillon says: 'Concerning useful trades and employments, a distinction is to be observed between the power to 'license' and the power to 'tax.' In such cases the former right, unless such appears to have been the legislative intent, does not give the authority to prohibit, or to use the license as a mode of taxation with a view to revenue, but a reasonable fee for the license and the labor attending its issue may be charged.' (1 Dillon, Munic. Corp., 3d ed., sec. 357.) The author is speaking with reference to a grant of the power to license, and not of a grant of the twofold power to license and tax, which twofold power, as we have seen, has been conferred upon the municipality of Galveston by its charter. In the previous portion of the section quoted the author remarks that when the power conferred in the charter is both to license and tax, unless there is some specific limitation on the authority of the Legislature in this respect, such provisions are constitutional.' In this State there is a specific constitutional limitation which, we think, would limit the grant of power to a municipality to levy an occupation or other tax for revenue purposes greater than one-half the tax levied by the State upon the same class of such subjects. But, as we have before stated, this constitutional limitation does not, we think, apply to a license tax prescribed incidentally in connection with and to meet the expenses of police regulation, provided such tax is not unreasonably large so as to be in fact a tax for revenue. This is the view expressed by this court in Ex parte Slaren, 3 Texas Crim. App., 662. It is there held that the constitutional limitation relating to taxation does not affect the power of the Legislature to confer upon a municipal corporation the authority to regulate the use of vehicles by such regulations as safety and good order may require, and to impose a sufficient amount of tax to meet the legitimate expense of keeping up such police regulations over the subject. In Slaren's case, as in Ex parte Gregory, before cited, the ordinance involved levied an occupation tax in excess of the constitutional and charter limitation, and was held invalid for that reason.

"Mr. Desty, in his work on Taxation, states that 'License fees are not taxes, but prices paid for the privilege of exercising a franchise. It is a tax only when revenue is the main purpose for which they are imposed.' (1 Desty, Tax., p. 305.)

"In The City of Mankato v. Fowler, 20 N. W. Rep., 361, it is said that the fact that the city derives a revenue incidentally from the reasonable exercise of the police power in regulating and controlling the business is no serious objection to an ordinance. 'What is a reasonable license fee must depend largely upon the sound discretion of the city council, having reference to all the circumstances and necessities of the case. The general rule is that a reasonable license fee should be intended to cover the expense of issuing it, the services of officers, and other expenses directly or indirectly imposed. Unless, however, the amount is manifestly unreasonable in view of its purpose as a regula-

tion, the court will not adjudge it a tax.' The court cites, in support of its views, City of St. Paul v. Colter, 12 Minn., 41; 2 Am. & Eng. Corp. Cases, 23; Van Hook v. Selma, 70 Ala., 361; Van Baalen v. The People, 40 Mich., 258, and 36 Am. Rep., 522, note.

"The case of Van Hook v. Selma, supra, involved the validity of an ordinance which exacted a license fee of $10 of all persons selling goods, wares and merchandise. The opinion in that case, delivered by Justice Somerville, is a clear and exhaustive one, and evidences mature and careful consideration. After citing and reviewing numerous authorities, the court sums up its conclusions as follows: 'We declare the true rule to be, in the case of useful trades and employments, and a fortiori in other cases, that, as an exercise of police power merely, the amount exacted for a license, though designed for regulation and not for revenue, is not to be confined to the expense of issuing it, but that a reasonable compensation may be charged for the additional expense of municipal supervision over the particular business or vocation at the place where it is licensed. For this purpose the services of officers may be required, and incidental expenses may be otherwise incurred in the faithful enforcement of such police inspection or superintendence. The rule further applies here, that when the question as to the reasonableness of a municipal by-law or city ordinance is raised, and it has reference to a subject matter within the corporate jurisdiction, it will be presumed to be reasonable, unless the contrary appears on the face of the law itself or is established by proper evidence.' And the court held that under these principles it could not judicially know that the license fee of $10 was unreasonable, but that the contrary was presumptively true, and the ordinance was valid. It is conceded in the opinion that there are authorities holding that if the sum required for such license exceeds the expense of issuing it, the act transcends the licensing power and imposes a tax; at least, in the case of useful trades and employments. But these conflicting authorities are not regarded by the court, in its opinion, as declaring the true rule upon the subject. In our opinion the correct rule is that adopted in this Alabama case, and is supported by the weight of modern American decisions. (See Van Horn v. The People, 46 Mich., 183; s. c., 41 Am. Rep., 159; St. Louis v. Woodruff, 71 Mo., 92; Gartside v. East St. Louis, 43 Ill., 37; Kitson v. Ann Arbor, 26 Mich., 325.)

"In treating upon the subject of license fees Mr. Cooley says: 'When a grant' (of power) 'is not made for revenue, but for regulation merely, a much narrower construction is to be applied' than where it confers the power also of raising revenue. But even where it is for regulation merely, 'a fee for the license may still be exacted; but it must be such a fee only as will legitimately assist in the regulation; and it should not exceed the necessary or probable expense of issuing the license and of inspecting and regulating the business which it covers. . . . But the limitation of the license fee to the necessary expenses will still leave a considerable field for the exercise of discre-

tion, when the amount of the fee is to be determined. . . . In fixing upon the fee it is proper and reasonable to take into account, not the expense merely of direct regulation, but all the incidental consequences that may be likely to subject the public to cost in consequence of the business licensed. In some cases the incidental consequences are much the most important, and indeed are what are principally had in view when the fee is decided upon. . . . And all reasonable intendments must favor the fairness and justice of the fee thus fixed; it will not be held excessive unless it is manifestly something more than a fee for regulation.' (Cooley on Taxation, pp. 408, 409, 410.) The doctrine thus announced by this great jurist and author is the same declared by the court in Van Hook v. Selma, supra, to be the correct rule.

"With regard to the reasonableness of the license fee of $8 imposed by the ordinance under consideration, we can not say that it is excessive or unreasonable. There is nothing in the ordinance itself which shows it to be unreasonable, and there is no evidence to support such a conclusion. Looking to the provisions of the ordinance, we find that it provides numerous regulations, the enforcement of which must necessarily demand the constant services of the police of the city, as well as the careful attention and supervision of the municipal officers and government. Considering not only the direct but the probable incidental expense of a proper enforcement of the regulations prescribed by the ordinance, it certainly does not appear that the license fees exacted are anything more than fees for regulation."

The object and purpose of the ordinance in this instance is clearly shown to be the adoption of measures to see that electrical apparatus is so installed as not to be dangerous to the life and property of the citizens of Houston, and is a proper exercise of the police power, and the fees collected can not be construed as an occupation tax. The ordinance, among other things, provides:

"Art. 109. Insulation.—The insulation resistance on all the circuits of all companies shall be maintained at a standard approved by the city electrician, and every facility for testing circuits shall be accorded by said city electrician, and all material used in construction, repairs or installation of all electrical works in this city, either inside or outside work, must be approved by said city electrician.

"Art. 110. Shall Not Construct New Work or Make Repairs Without Permit.—No person or firm or corporation shall hereafter commence the construction, installation, repair or alteration of any electrical work, either inside or outside of any building, or any wiring inside or outside of any building, without first making application in writing to the city electrician for a permit for such construction, installation, repair, alteration or wiring, and said application shall contain a description by street and number, or by streets, lots or blocks,

as may be necessary to locate the same, and shall be accompanied with the inspection fees required to be paid.

"Art. 111.  City Electrician Shall Issue Permit.—Upon making the application provided for in Article 110 and the payment of the inspection fees, provided for by this chapter, the city electrician shall issue a permit for the construction, installation, repair or alteration of any electrical work, and shall carefully inspect such work previous to, during and after its completion, and if the same shall prove to have been constructed in accordance with all the rules and requirements of this chapter governing the same, and upon the payment of any additional fee for additional inspection not embraced in the original application, the city electrician shall issue a certificate approving the same. The use of any electrical construction, such as is provided for in this chapter, is hereby declared to be unlawful previous to the issuing of the certificate above mentioned, provided the city electrician may issue a temporary permit for the use of electric current during the course of construction or alteration of a building when in his judgment it is safe so to do, but such temporary permit shall expire when such building is completed."

Article 112 consists of rules for the construction and installation of all character of electrical apparatus.  It is not attempted to be shown that these rules are other than proper and necessary to protect the lives and property of the citizens, and in that excellent work "Cyc.," under the head of "Municipal Corporations," will be found many authorities cited upholding the right of a city to pass ordinances in protection of both, in the erection of buildings, etc.; to require permits to be obtained, and inspection fees paid in all work involving danger to property, life and health.  In a recent opinion this court adheres to the holding in Ex parte Gregory, supra, saying, in Ex parte Denny, 59 Texas Crim. Rep., 579, 129 S. W. Rep., 1115:

"That the sums imposed in the regulation of such business are license fees and not occupation taxes, in the cause in which these terms are used, has been quite uniformly held by all the courts of this State. In the case of Brown v. Galveston, 97 Texas, 1, 75 S. W. Rep., 488, it was held that where a city is authorized to levy a' license tax on a particular property or business, and such tax has been imposed, it will be presumed that the levy was made for the purpose authorized by law, and it was there held, in a matter quite similar to this, that the commissioners had a right to require a license and payment therefor, and that the fee charges is not unreasonable, nor is it double taxation, and therefore is not in conflict with the Constitution.  Almost the identical question here raised was decided by this court adversely to relator in the case of Ex parte Ed Wilson, 56 Texas Crim. Rep., 1, 117 S. W., 1197, in which Judge Brooks, speaking for the court, in terms approved the decision of the Court of Civil Appeals for the Fifth Supreme Judicial District in the case of Kissinger v. Hay, 52 Texas Civ. App., 295, 113 S. W., 1005.  These authorities are in harmony

with the earlier case of Ex parte Gregory, 20 Texas Crim. App., 210, 54 Am. Rep., 516, which contains an elaborate discussion of all the principles and rules of construction approved by the best authors on municipal law. License fees are not taxation, but prices paid for the privilege of exercising a franchise. It is a tax only when revenue is the main purpose for which they are imposed. 1 Desty on Taxation, p. 305. Again, it is said that the regulation of a business or occupation is usually and most effectually accomplished by means of issuing a license provided for by ordinance. Smith's Mun. Corp., vol. 1, p. 1387."

Thus it seems that this court, our Supreme Court, and the Courts of Civil Appeals, are all in harmony in holding that license and inspection fees, levied under the police power of a city, are not an occupation tax. See also Allerton v. City of Chicago (C. C.), 6 Fed., 555; Johnson v. Philadelphia, 60 Pa., 445; Wiggins Ferry Co. v. East St. Louis, 107 U. S., 365, 2 Sup. Ct. Rep., 257, 27 L. ed., 419; City of St. Louis v. Weitzel, 130 Mo., 600, 31 S. W. Rep., 1045; City Council of Charleston v. Pepper, 1 Rich. Law (S. C.), 364; Browne v. Mobile, 122 Ala., 160, 25 So., 223; United States Distilling Co. v. Chicago, 112 Ill., 19, 1 N. E., 166; Munn v. Illinois, 94 U. S., 113, 24 L. ed., 77; City of Covington v. Woods, 98 Ky., 344, 33 S. W., 84; Oil City v. Oil City Trust Co., 11 Pa. Co. Ct. R., 350; Chilvers v. People, 11 Mich., 43; Ash v. People, 11 Mich., 347; Desty on Taxation, sec. 64, pp. 303 and 316, and notes; Brewster v. City of Pine Bluff, 65 S. W. Rep., 934, and authorities there cited.

We hold that the ordinance in question is a proper exercise of the police power, and that the inspection fees charged, not having been shown to be excessive, are legal and not in contravention of the Constitution.

*Applicant remanded to custody.*