JAMES McMILLAN *v.* CITY OF KNOXVILLE.

(*Knoxville.* September Term, 1917.)

1. **LICENSES. Nature of "license." Occupation tax.**

A "license," in its truer sense is issued under the police power, not for revenue, but for regulation, while a license may be issued on payment of an "occupation tax" levied under Constitution article 2, section 28, conferring power to tax privileges, revenue being its primary object, though regulation may be incidental; power exercised in the first case being to license and in the other to tax and license. (*Post, pp.* 323, 324.)

Acts cited and construed: Acts 1917, ch. 78.

Constitution cited and construed: Art. 2, sec. 28.

2. **LICENSES.   Nature of "occupation tax."**

An "occupation tax" is levied primarily for revenue, and in instances for regulation incidentally. (*Post, p.* 324.)

Case cited and approved: Mayor of Nashville v. Linck, 80 Tenn., 507.

3. **LICENSES. Employment agencies. Statutes. Repeal.**

It was competent for the legislature to provide a regulatory license for and also an occupation tax on employment agencies, the two not being inconsistent or impringing on each other; and hence Pub. Acts 1917, chapter 78, providing for the regulation and supervision of "employment agencies," and requiring one engaging in such business to pay a fee and obtain a license, did not repeal Pub. Acts 1917, chapter 70, taxing the business of emigrant agents. (*Post, p.* 324.)

4. **CONSTITUTIONAL LAW. Licenses. Occupations. Amendment.**

It was competent for the legislature to add to whatever regulation was created in the imposition of a privilege or occupation tax on employment agencies under Pub. Acts 1915, chapter 101, and Pub. Acts 1917, chapter 70, by providing for more detailed policing regulation thereof in Pub. Acts 1917, chapter 78. (*Post. p.* 325.)

5. **LICENSES. Nature of fee. Distinction from occupation tax.**

A true license fee, as contradistinguished from an occupation tax, should be fixed to cover the expense of issuing it, the services of officers and other expenses directly or indirectly incident to supervising the particular business of occupation. (*Post, p.* 325.)

Case cited and approved: Ex parte Cramer, 62 Tex. Cr. R., 11.

6. **LICENSES. Occupation tax. Employment agencies.**

A license issued to an employment agent on payment of an occupation tax under Pub. Acts 1915, chapter 101, levied primarily for revenue, did not preclude the State and a city from denying him the privilege of continuing the emigrant feature of his business thereunder until its expiration without payment of the tax on emigrant agents imposed by Pub. Acts 1917, chapter 70, and a city ordinance. (*Post, pp.* 325, 326.)

Acts cited and construed: Acts 1915, ch. 101; Acts 1917, ch. 70.

7. **WORDS AND PHRASES. ''Employment agency.''**

An "employment agency" may be defined to be one for the brokerage of labor for a fee paid by the applicant for employment or by the prospective employer, and any definition thereof would include the employment of laborers to work for another either in or beyond the State, and it does not imply placing of laborers and domestics in the borders of the State only. *Post, pp.* 326-329.)

Cases cited and approved: Kelly v. Dwyer, 75 Tenn., 180; Hirn v. State, 1 Ohio St., 21.

Case cited and distinguished: Robbins v. Taxing District, 81 Tenn., 303.

8. **CONSTITUTIONAL LAW. Licenses. Statutes. Modification or repeal.**

A licensee is bound to know that his license or permit, issued on payment of a tax primarily for revenue, is held subject to modification or repeal of the law under which it was issued, from the making of which change if the public welfare required it, no incidental inconvenience to him would stay the law. (*Post, pp.* 329, 330.)

McMillan v. City of Knoxville.

Cases cited and approved: Moore v. Indianapolis, 120 Ind., 484; ·Fell v. State, 42 Md., 71; Beer Co. v. Massachusetts, 97 U. S., 25; Plow Co. v. Hays, 125 Tenn., 148.

Case cited and distinguished: Gundling v. Chicago, 177 U. S., 183.

9. **COMMERCE.** Interstate commerce. Restriction by license tax.

The tax imposed by Pub. Acts 1917, chapter 70, on the business of emigrant agents, is not a restriction on interstate commerce. *Post, pp.* 330, 331.)

10. **CONSTITUTIONAL LAW.** Licenses. Freedom of contract.

Such tax does not interfere with freedom of contract. (*Post, pp.* 330, 331.)

11. **CONSTITUTIONAL LAW.** Licenses. Equal protection of the Laws.

Such tax does not deny equal protection of the laws, because the busines of hiring laborers within the State is not subject to a like tax. (*Post, pp.* 330, 331.)

Cases cited and approved: Williams v. Fear, 110 Ga., 584; Kendrick v. State, 142 Ala., 43; State v. Hunt, 129 N. C. 686; People v. Warden, etc., 183 N. Y., 223.

---

FROM KNOX.

---

Appeal from the Circuit Court of Knox County.— VON A. HUFFAKER, Judge.

CHAS. M. ROBERTS, for plaintiff.

J. PIKE POWERS, JR., for defendant.

139 Tenn.—21

Mr. Justice Williams delivered the opinion of the Court.

This suit involves the liability of plaintiff in error for conducting the business of an emigrant agent without obtaining a license, as required by a city ordinance. The case was tried upon an agreed statement of facts. McMillan was found guilty by the city recorder and, on appeal, by the circuit judge. He has prosecuted an appeal to this court and assigned error.

The General Assembly of 1917 (Pub. Acts 1917, chapter 70) made the conducting of the business of an "emigrant agent" a privilege, and fixed the tax at $500 per annum; and the city, in pursuance of statutory power, subsequently by ordinance made the same a city privilege. The ordinance recites, substantially in the language of the statute:

"Emigrant Agent.

"Each emigrant agent, or person engaged in hiring or soliciting emigrants in this city to be employed or to go beyond the limits of the State must pay an annual license, each per annum, $500."

Before the passage of the act and ordinance McMillan had paid the privilege tax prescribed for "employment agencies" in Acts 1915, chapter 101, and the license issued to him did not expire until October 8, 1917.

There was also passed in 1917 another act (Pub. Acts 1917, chapter 78) providing for the regulation

and supervision of "employment agencies," which made it the duty of one engaging in that business to pay a fee and obtain a license from the State to be issued by the department of factory inspection. The act sets forth the details of the regulation by and the reporting to be made to the department, and prescribed a penalty for failure to comply. It is claimed by appellant that the passage of this last act operated to repeal by implication the other act or acts.

A further question is whether McMillan is liable for the emigrant agent's tax of $500; and whether the license that he held as operator of an employment agency protects him in doing the acts complained of, which were done after the passage of the ordinance, but before that license had expired.

The errors assigned are fairly indicated in the discussion which follows, and will not be formally stated.

At the outset it becomes material to determine the nature of the license as employment agent so held by McMillan, and of the one issuable under the regulating statute. Chapter 78 of Acts 1917.

By article 2, section 28, of our Constitution, it is provided that the legislature shall have power to tax privileges in such manner as they may from time to time direct, thus stamping a privilege to pursue an occupation as a tax—more strictly speaking an "occupation tax," but usually called in this jurisdiction a "privilege tax."

A "license," in its truer sense, is issued under the police power, while a license may be issued on the payment of an "occupation tax," levied under this taxing power embodied in the Constitution, revenue being its primary object, though regulation may be in mind as an incident. The two charges and licenses are distinct things, but confusion of thought arises at times, due to the fact that a license may be issued in either case. In the one case, the power exercised is that to license, and in the other to tax and to license. 3 McQuillin, Mun. Corp. section 961.

Judge COOLEY says that under the authority to license in the truer sense "a municipal corporation may by ordinance require a license to be first taken out, and charge a reasonable sum for issuing the same, and keeping the necessary record, but it cannot, by virtue of this authority, without more, levy a tax upon an occupation itself." *Mayor of Nashville v. Linck,* 12 Lea (80 Tenn.), 507. A license in this sense is a permit issued not for revenue, but for regulation. As said, an occupation tax is levied for revenue primarily, and, in instances, for regulation incidentally.

We are of opinion that it was competent for the legislature to provide a regulatory license for, and also an occupation tax upon, such agencies. The two are not inconsistent; neither impinges on the other. 17 R. C. L., p. 486. Therefore the enactment of chapter 78 did not repeal chapter 70 of the Acts of 1917.

It was competent for the legislature to add to whatever regulation was manifested in the imposition of the privilege or occupation tax, by providing for the more detailed policing regulation set forth in Acts 1917, chapter 78, and to fix a fee therefor.

A true license fee, as contradistinguished from such a tax, should be fixed to cover the expense of issuing it, the service of officers, and other expenses directly or indirectly incident to the supervision of the particular business or vocation. There is no attempt in this case to question the amount of the license fee as being excessive or so unreasonable as to partake of the nature of a tax. *Ex parte Cramer,* 62 Tex. Cr. R., 11, 136 S. W., 61, 36 L. R. A. (N. S.), 78, Ann. Cas., 1913C, 588.

McMillan also insists that since he had a privilege license to operate an ''employment agency'' until October 8, 1917 (which license was issued to him under Pub. Acts 1915, chapter 101), he could not be required by the city, in order to continue emigrant business, to take out a license under chapter 70 of the Act of 1917, which, as stated, together with the ordinance thereunder, was passed while his license was current. The city's counter contention is that, after the passage of the act of 1917 and its own ordinance, McMillan exercised a separate privilege from the one formerly exercised under his license as employment agent.

Did the license held by McMillan when it was originally issued cover the emigrant feature of his business?

We think that an "employment agency" may be defined to be one for the brokerage of labor for a fee paid by the applicant for employment or by the prospective employer, and that any definition of the phrase "employment agency," in the absence of restrictive words, would include the employment of laborers to work for another either in or beyond the State. It is, moreover, made clear that the act of 1915 should be so construed, since the legislature itself proceeded upon that construction of the phrase "employment agency" in Pub. Acts 1917, chapter 78, wherein it is stipulated that it shall be unlawful for any person conducting an "employment agency" to ship any number of employees to any point without the State without first advising the applicants as to the existence of strikes, etc. The phrase "employment agency" does not imply the placing of laborers and domestic servants in the borders of this State only. Had McMillan engaged in the hiring of laborers for out of State employment only, prior to 1917, without procuring a license under the act of 1915, we doubtless would have held him subject to punishment; and this seems to us to be the test whether the license he did procure covered such an act.

Having then a license which on date of issue authorized him to engage in emigrant employment

business and which had not expired when he was arrested in this proceeding, the question arises whether it lay in the power of the city under legislative authority· to carve out of the broader privilege of conducting an employment agency, one of its elements, employment of emigrant labor, and impose an occupation tax on the conduct of it.

It is observed that the attempt to create by subdivision a distinct privilege of conducting emigration agencies was the State's under its power; and that the city did not undertake without precedent and specific legislative power to make two privileges - out of the business formerly conducted as an employment agency. As was said in *Robbins* v. *Taxing District*, 13 Lea (81 Tenn.), 303, 307:

''The legislature may divide merchants, or other dealers into classes for the purpose of separate taxation, and may authorize municipal corporations to make the same division. The legislature, by the statute under consideration, has now done what the municipality could not itself previously do and created a privilege of a specified part of a general business, which might otherwise have been carried on under the usual occupation license, for purposes of taxation. This was, as we have repeatedly held, within the competency of the legislature.''

Was it also competent for the legislature to so change the privilege as to deny to McMillan the right to continue the emigrant feature of his business under his license until the date of its expiration?

This depends upon the nature of the right conferred by that license. In *Kelly* v. *Dwyer,* 7 Lea (75 Tenn.), 180, it appeared that a general grocery merchant, who kept spirituous liquors as a part of his stock, took out license issuable to a merchant of his class, protecting him in the sale of the liquors; but during the running of the license period the legislature passed an act declaring the business of a liquor dealer to be a privilege, not to be exercised without a license and the payment of a special privilege tax. It was held that the old license did not longer protect the dealer in respect of the liquor feature of his business, the court saying:

"It is insisted by the plaintiffs that they are protected by their license from the payment of any of these taxes until the expiration of their license on the 1st of November, 1881. But the license, as we have seen, is only to exercise the privilege of merchants for one year, 'subject to the laws of the State,' and the bond executed by the merchant is to pay the amount of State and county tax 'as prescribed by law.' Neither the license nor the bond limits the taxes which the merchant shall pay, to the taxes as they stood at the date of the bond. No part of the taxes for the year 1881 was then paid. The license was only a license, not a contract by the payment of a consideration. There was no estoppel on either party. The plaintiffs might have ceased to do business before the 1st of January, 1881, and the state had plenary power to change its rate of taxation at any time."

This is in harmony with the general rule.  In Cooley on Taxation (3 Ed.), 1150, it is said that a license to sell liquors is not a grant or contract, but a mere permit subject to be changed or even annulled whenever the public welfare demands it; and that its issuance does not preclude the licensee's being required to pay a different or a larger fee or tax for the unexpired term.

In *Hirn* v. *State,* 1 Ohio St., 21, the plaintiff had been granted a license under the laws of that State to keep an inn, which permitted him to sell spirituous liquors for a certain period of time, and had paid therefore a substantial license fee.  Before the expiration of that period the legislature passed an act repealing the law under which the license was granted, and thereby revoked the license.  The plaintiff contended that the legislature had no power to pass such an act. But the court said they were not disposed to question the power of the legislature in a matter of that kind, connnected, as it was, with the public policy and domestic regulations of the State; that upon the ground of protecting the health, morals, and good order of the community, they were not prepared to say that the legislature did not possess the power to revoke such license.

The privilege tax involved in this case was levied not merely for revenue, but with regulation as an incidental purpose; and we hold that when such is the case, the State and city are not estopped or precluded as claimed.  The licensee was bound to know

that the license or permit was held subject to the modification or repeal of the law under which it was issued, from the making of which change, if the public welfare required it, no incidental inconvenience he would suffer could stay the hand of the State. *Moore* v. *Indianapolis,* 120 Ind., 484, 22 N. E., 424; *Fell* v. *State,* 42 Md., 71, 20 Am. Rep., 83; *Beer Co.* v. *Massachusetts,* 97 U. S., 25, 24 L. Ed., 989; *Plow Co.* v. *Hays,* 125 Tenn., 148, 154, 140 S. W., 1068, and cases there cited.

"It is not a valid objection to the ordinance that it partakes of both the character of a regulation and also that of an excise or privilege tax. The business is more easily subjected to the operation of the power to regulate, where a license is imposed for following the same, while the revenue obtained on account of the license is none the less legal because the ordinance which authorized it fulfills the two functions, one a regulating and the other a revenue function. So long as the State law authorizes both regulation and taxation, it is enough, and the enforcement of the ordinance violates no provision of the federal Constitution." *Gundling* v. *Chicago,* 177 U. S., 183, 20 Sup. Ct., 633, 44 L. Ed., 725.

A further attempt is made to impeach the constitutionality of the privilege or occupation tax, assessed by the city on emigration agencies under the authority of chapter 70 of Pub. Acts of 1917, for unconstitutionality.

In several States taxes have been imposed upon persons engaged in the business of hiring laborers in the State to emigrate and take employment out of the State. The tax is held to be neither a restriction upon interstate commerce nor an interference with the freedom of contract; nor does it deny the equal protection of the laws, because the business of hiring persons to labor within the State is not subjected to a like tax. Perhaps the leading case is *Willliams* v. *Fear*, 110 Ga., 584, 35 S. E., 699, 50 L. R. A., 685, affirmed 179 U. S., 276, 21 Sup. Ct., 128, 45 L. Ed., 186; and in accord are *Kendrick* v. *State*, 142 Ala., 43, 39 South., 203; *State* v. *Hunt*, 129 N. C., 686, 40 S. E., 216, 85 Am. St. Rep., 758; *People* v. *Warden, etc.*, 183 N. Y., 223, 76 N. E., 11, 2 L. R. A. (N. S.), 859, 5 Ann. Cas., 325, and note.

We, therefore, hold that said act is not unconstitutional in these respects.

We are thus brought to the conclusion that appellant was liable for the $500 tax, and that the judgment of the court below must be affirmed. So ordered.