## HANZAL et al. v. CITY OF SAN ANTONIO et al. (No. 6418.)

(Court of Civil Appeals of Texas. San Antonio. June 9, 1920. Rehearing Denied June 29, 1920.)

**1. Licenses ⊂⇒7(2)—Ordinance licensing barbers not discriminatory.**

An ordinance requiring barbers to pay a license for purpose of inspection, etc., was not discriminatory because a higher charge was made in proportion against shops with a small number of chairs than against those with a greater number, such difference in proportion showing rather that the inspection of a small shop would cost more in proportion than the inspection of a large shop.

**2. Health ⊂⇒20—Power to enact sanitary laws inherent.**

The power to enact laws for sanitary purposes and protection of the health of the public is inherent in every sovereignty.

**3. Licenses ⊂⇒6(1)—Power to require licenses for protection of public health may be delegated to city.**

The power to require licenses for the protection of the public health, decency, and morals may be exercised by the state directly, or it may be done indirectly by a municipal corporation created by the state and clothed with such authority.

**4. Health ⊂⇒20—Trades and professions may be regulated.**

Any occupation, trade, or profession may be regulated in the interest of the public health, safety, or morals.

**5. Constitutional law ⊂⇒81—Police power cannot be surrendered.**

The exercise of the police power is inherent in every sovereign state and cannot be surrendered.

**6. Constitutional law ⊂⇒63(2)—Power to prescribe rules for prevention of disease not delegation of legislative authority.**

Power granted to municipalities and other agents of government to prescribe rules for prevention of diseases and the preservation of health is not a delegation of authority which is prohibited by the Constitution.

**7. Constitutional law ⊂⇒230(3), 287 — Ordinance relating to license and inspection of barbers did not deny equal protection or due process.**

An ordinance of the city of San Antonio providing for the regulation and inspection of barber shops and appliances, and the periodical examination of persons engaging in the occupation of a barber to ascertain if they are free from any infectious, contagious, or communicable disease and any venereal disease in a communicable form, and requiring the payment of license fees to cover the cost of inspection, does not deny due process of law nor equal protection of the law.

**8. Municipal corporations ⊂⇒591—Could delegate to health officer power of deciding what may be infectious, etc., diseases.**

In an ordinance regulating barbers, and providing for a license and physical inspection, etc., the commissioners of the city of San Antonio were vested with the authority, under City Charter, § 99, to place the power of deciding what may be an "infectious, contagious, or communicable disease" to its health officer.

**9. Constitutional law ⊂⇒238(1), 278(4)—Ordinance prohibiting sleeping room in barber shops not denial of due process or equal protection.**

The requirement of an ordinance of the city of San Antonio that no sleeping or living room shall be kept or maintained in connection with any barber shop, or place where the trade of barbering is conducted, is not unconstitutional as denying due process of law or equal protection of the law.

**10. Municipal corporations ⊂⇒591—Ordinance permitting health officer to deny barber license need not provide for aid of court.**

An ordinance, giving health officer power to deny a barber infected with disease, etc., a license, need not provide that any barber seeking redress for any supposed wrong might invoke the aid of some court, since adequate remedies for all wrongs are provided by the laws of the state.

**11. Licenses ⊂⇒7(1)—Ordinance providing for appeal to illegal tribunal not invalid.**

An ordinance providing for the licensing of barbers by health officer is not rendered unconstitutional by reason of the fact that it provides for an appeal to an illegal tribunal, the courts still being open to any barber seeking a redress for any supposed wrong.

**12. Licenses ⊂⇒7(1)—Ordinance need not define infectious diseases.**

It was not necessary that an ordinance, permitting health officer to deny license to a barber having an infectious, contagious, or communicable disease, give a definition of such diseases.

**13. Licenses ⊂⇒6(2)—Ordinance providing for license presumed to contemplate regulation and not revenue.**

When a power to license is given by a city ordinance the intendment must be that regulation is the object, unless there is something in the language of the grant, or in the circumstances under which it is made, indicating with sufficient certainty that the raising of revenue by means thereof was contemplated.

**14. Municipal corporations ⊂⇒625—Ordinance regulating barber shops not unreasonable.**

Ordinance of San Antonio, providing for the regulation and inspection of barber shops, and all of their equipments and appliances, and the physical and periodical examination of all persons who may engage in the trade of a barber, in order to ascertain if they are free from any infectious, contagious, and communicable disease, etc., *held* not unreasonable.

⊂⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Appeal from District Court, Bexar County; W. S. Anderson, Judge.

Suit by Ollie Hanzal and others against the City of San Antonio and others. Judgment for defendants, and plaintiffs appeal. Affirmed.

J. B. & W. M. Lewright, of San Antonio, for appellants.

R. J. McMillan and J. D. Dodson, both of San Antonio, for appellees.

FLY, C. J. This is an appeal from a judgment of the Thirty-Seventh district court, sustaining exceptions to the petition and denying a temporary writ of injunction to a number of persons describing themselves as "actively engaged in a mechanical pursuit or occupation, to wit, that of a barber," who are attacking the validity of an ordinance passed by the city, which is for the regulation of "barber shops and the trade or occupation of barbering," and who desired to restrain the enforcement of the ordinance until the cause can be heard on its merits.

Section 99 of the charter of the city of San Antonio authorizes the city to license, regulate, and inspect all trades, professions occupations, callings, and business carried on in said city, whenever and wherever the commissioners shall deem such regulation, inspection, and license necessary or proper for the good order, public health, public safety, or general police regulation of the city, and charge license and inspection fees therefor, and that such fees shall not be construed as occupation taxes. That section undoubtedly authorizes the passage of the ordinance complained of in this case, which provides for the regulation and inspection of barber shops and all of their equipments and appliances in the city, and the periodical physical examination of all persons who may engage in the occupation or trade of a barber, in order to ascertain if he is "free from any infectious, contagious, or communicable disease and any venereal disease in a communicable form," and to require the payment of license fees to cover the cost of inspection.

[1] The ordinance is attacked as unconstitutional because it seeks to collect occupation taxes, seeks to deprive citizens of rights without due course of law, and is discriminatory and unequal in its operation. The ordinance does not deprive appellants of any opportunity to assert their rights in the courts of the country, as is apparent from the filing and prosecution of this suit, and is not discriminatory because it bears alike upon all proprietors of barber shops and all barbers. It is true that a higher charge is made in proportion against shops with a small number of chairs than against those with a greater number, but that does not in itself show discrimination, but rather that the inspection of a small shop will cost more in proportion than the inspection of a large shop.

[2, 3] If the ordinance that is assailed by appellants is one enacted, not for the purpose of the collection taxes or public revenues, but for sanitary purposes and protection of the health of the public, it is not unconstitutional. The power to enact laws for these purposes is inherent in every sovereignty, and can be delegated by such sovereignty to agencies created by it for such purposes. The power to require licenses for the protection of the public health, decency, and morals, may be exercised by the state directly, or it may be done indirectly through a municipal corporation created by the state and clothed with such authority. Cooley on Taxation, c. 19, pp. 1125–1138.

[4-6] There is no allegation that any revenue will be derived from the license fees, except sufficient to pay the expense of the different inspections required by the ordinance, and it is well settled that any occupation, trade, or profession can be regulated in the interest of the public health, safety, or morals. Among all the objects sought to be secured by the governing power, none is more vital and important than the preservation of public health, and never in the history of the world has that truth been more clearly recognized than in modern times. However careless and indifferent government may have been at times in using all the means at hand to prevent disease, in this age laws looking to the prevention and spread of disease are receiving the thought of the medical profession and the lawmakers of the country. In this way laws have been passed to destroy the mosquito, the nimble and destructive bearer of yellow fever and malaria, and get rid of their breeding places; to destroy the rat who carries with him the deadly bubonic plague; to purify milk, water, and food, so as to prevent the dissemination of typhoid fever; to use vaccine and serums to prevent many diseases which at no very distant period in the past decimated the people of the earth.

This is the day of prophylaxis, and the highest and best efforts of men are marshaled to prevent disease and preserve health, rather than to await the approach of the forces of disease and death and then use efforts to destroy and annihilate them. Courts are lending their approval to such advanced humanitarian ideas, and giving full force and effect, whenever practical and in consonance with enlightened construction of constitutional provisions, to sanitary laws. The sordid interest of the individual must give way when it becomes necessary to conserve and protect the health of the people, which has been aptly termed the most valuable economic asset and the greatest social blessing that can be secured to any govern-

ment. As the teeming millions of inhabitants have gathered under the protecting folds of the American flag, and our civilization becomes more complex, and the calls far more insistent for the exercise of the police power inherent in every sovereign state, and which cannot be surrendered, such police power must be constantly protected in the interest of the masses by legislative enactment and judicial construction. The state cannot, by reason of the vastness of demands made upon it, and the complexities of local situations and exigencies constantly arising, supervise and superintend on all occasions, and courts, recognizing the necessity for it, have held uniformly that the power granted to municipalities and other agencies of government to prescribe rules for the prevention of disease and the preservation of health is not a delegation of legislative authority which is prohibited by the Constitution. And so it is San Antonio and other Texas cities are given the authority to prescribe methods and means for the conservation of the public health.

Health regulations being of such vital importance to any community, must, if reasonable and impartial, be submitted to by individuals for the public good and general welfare. As said by the Supreme Court of Vermont in Thorpe v. R. R. Co., 27 Vt. 150, 62 Am. Dec. 625, and approved by the Supreme Court of the United States in Railroad Co. v. Husen, 95 U. S. 465, 24 L. Ed. 527, in discussing the police power of a state:

"Persons and property are subjected to all kinds of restraints and burdens, in order to secure the general comfort, health, and prosperity of the state, of the perfect right of the Legislature to do which no question ever was, or, upon acknowledged general principles, ever can be made, so far as natural persons are concerned."

As intimated by the Supreme Court of the United States, such police power is founded "in the sacred law of self-defense." Again, in the case of Holden v. Hardy, 169 U. S. 366, 18 Sup. Ct. 383, 42 L. Ed. 780, after upholding state laws for the protection of human life, it was held:

"But, if it be within the power of a Legislature to adopt such means for the protection of the lives of its citizens, it is difficult to see why precautions may not also be adopted for the protection of their health and morals. It is as much for the interest of the state that the public health should be preserved as that life should be made secure. * * * Though reasonable doubts may exist as to the power of the Legislature to pass a law, or as to whether the law is calculated or adapted to promote the health, safety, or comfort of the people, or to secure good order, or promote the general welfare, we must resolve them in favor of the right of that department of government." 12 R. C. L. pp. 1273–1276.

As to trades, callings, and occupations, laws regulating and throwing restrictions about them in the interest of the public health are everywhere upheld and sustained, and where the validity of such laws is challenged it is no longer a question of authority to enact them, but whether the occupation, calling, or business is one involving the public health. 12 R. C. L. p. 1283, and numerous authorities cited in footnotes.

Health authorities of municipalities are often empowered, and it is made their duty to execute rules, and courts uniformly hold that it is not an improper delegation of legislative authority, to adopt and execute such rules as are expedient to prevent the spread of cholera, smallpox, yellow fever, scarlet fever, diphtheria, and other communicable diseases. Such precautionary measures are sustained in every civilized community. The law of necessity demands that the great majority must be protected even at the expense of some of the rights of the individual. Under the complex conditions of civilized life, necessarily some of the unquestioned rights of the untutored savage must be surrendered without cavil or murmur when the public health, the public morals, or the public weal demand it.

[7] It is not contended that the ordinance is unnecessary, and that there is no call for regulation of the occupation of barbers, to protect the public from the probable infection that might be imparted through careless or unsanitary barbers. The state directly, or through any agencies created by it, has the power and authority to use preventive means against such probable contagion, infection, or communication of vile diseases, and it invades no constitutional right of appellants by so doing, nor robs them of equal protection of the laws; nor is the ordinance discriminatory, nor is it a tax, but merely a regulatory health ordinance to be enforced through the medium of a required inspection and license. The authority to delegate the power to the health officer to revoke a license is necessary to the vitality of the ordinance, and such delegation has been often sustained. Fischer v. St. Louis, 194 U. S. 361, 24 Sup. Ct. 673, 48 L. Ed. 1018. Neither due process of law nor the equal protection of the laws is denied by the ordinance in question. The Supreme Court of the United States has held through the present venerable Chief Justice that an ordinance prohibiting any person from public speaking on "Boston Common" without a license or permit was within the police power, and not unconstitutional. Davis v. Commonwealth of Massachusetts, 167 U. S. 43, 17 Sup. Ct. 731, 42 L. Ed. 71. In that case it was held that the Legislature could pass such a law, and further:

"If the Legislature had power under the Constitution to pass a law in the form of the

present ordinance, there is no doubt that it could authorize the city of Boston to pass the ordinance."

[8, 9] The commissioners of the city of San Antonio were invested with the authority to place the power of deciding what may be an "infectious, contagious, or communicable disease" to its health officer. Re John Flaherty, 105 Cal. 558, 38 Pac. 981, 27 L. R. A. 529; Wilson v. Eureka City, 173 U. S. 32, 19 Sup. Ct. 317, 43 L. Ed. 603. The contention that the power of passing upon the infectious, contagious, or communicable nature of diseases is made the occasion to animadvert upon the ability of "physicians of the so-called regular or allopathic school" to determine whether such contagion, infection, or communicability exists. With this contention this court is not concerned until a case arises in which some disease is pronounced infectious, contagious, or communicable which a barber may deem not properly classified. The lack of knowledge as to the classification of diseases by the health officers will not be anticipated, but will be investigated if it should ever be presented. The same may be said of those parts of the ordinance having reference to operating a barber shop in connection with a sleeping or living room. It may be stated, however, that the ordinance does not attempt, as alleged in the petition, "to make it a penal offense to conduct, operate, or maintain a barber shop under the same roof or in the same building with a sleeping or living room, or in connection with such sleeping or living room." The requirement of the ordinance is that "no sleeping or living room shall be kept or maintained in connection with any shop or place where the trade of barbering is conducted."

[10, 11] The right to enter the courts of the state in case a license is denied or is canceled is not attempted to be taken away by the ordinance, but that right will remain and will be secured to every barber who may feel aggrieved. It was not incumbent upon the city commission to provide that any barber seeking redress for any supposed wrong might invoke the aid of some court of competent jurisdiction, nor to instruct him how to proceed in case he needed the aid of a court. Adequate remedies for all wrongs are provided by the laws of Texas, either in courts of law or equity, and the ordinance cannot be reasonably assailed because it is silent on the subject. If the offended barber does not desire to appeal from the act of the health officer to the commissioners of the city, because he deems such appeal unconstitutional and to an illegal tribunal, he still has the courts open to him. Providing for such appeal, although not permitted by Constitution or law, surely would not affect the validity of the ordinance. The ordinance does not seek to give judicial power to the commissioner of parks.

[12] It was not necessary to the validity of the ordinance to give a definition of the words, "infectious, contagious, or communicable disease." Almost every man of moderate intelligence knows that smallpox, measles, diphtheria, mumps, whooping cough are either infectious, contagious, or communicable, and if any disease is held to be in the category mentioned, about which any aggrieved person has doubts, he can have a judge or jury to pass upon the question. We may not know all the diseases that are infectious, as contradistinguished from those contagious, but with the ordinary diseases most persons know whether they are communicable, or, in common parlance, "catching." We do not think the enforceability of the ordinance will be weakened or impaired by a failure to name all of the infectious, contagious, or communicable diseases to which humanity is subject, or the new ones that, like the influenza, may spring into existence at any time.

Great reliance is placed by appellants upon a decision by the Court of Criminal Appeals in the case of Jackson v. State, 55 Tex. Cr. R. 557, 117 S. W. 818, in which it was held that an act relating to barbers, passed by the Thirtieth Legislature, Gen. Laws, p. 273, was unconstitutional and void because it sought to levy an occupation tax upon a mechanical pursuit, and because it was discriminatory. The discrimination consisted in exempting from the license fee barbers who might be students of the University and schools, and those in eleemosynary institutions and in towns of 1,000 inhabitants or less. After discussing the matter of occupation tax and discrimination, the decision was placed on the ruling in Ex parte Woods, 52 Tex. Cr. R. 575, 108 S. W. 1171, 16 L. R. A. (N. S.) 450, 124 Am. St. Rep. 1107, and Owens v. State, 53 Tex. Cr. R. 105, 112 S. W. 1075, 126 Am. St. Rep. 772. In those cases the statutes were declared unconstitutional because discriminatory and class legislation. Judge Ramsey, who wrote the opinion in the Woods Case, dissented in the Jackson Case, on the ground that the license fee was not a tax. In the case of Longmire v. State, 75 Tex. Cr. R. 616, 171 S. W. 1165, Ann. Cas. 1917A, 726, the Jackson Case was ignored by the Court of Criminal Appeals, and the writer of the opinion in the Jackson Case agreed thereto, although there was a dissent by another member of the court. In the Longmire Case it was said by the majority of the court:

"The police power inherent in the state has been likened unto the law of self-defense, that is said to be born in each individual. As the individual has the right to protect his life or body from serious bodily injury, and his property which he has lawfully acquired from destruction, so the state has the inherent right, under the police power, to protect the public welfare from those things which would produce

death or seriously affect the health of the public or its general moral welfare."

We concur in that sentiment.

Again in the case of Ex parte Cramer, 62 Tex. Cr. R. 11, 136 S. W. 61, 36 L. R. A. (N. S.) 78, Ann. Cas. 1913C, 588, the Jackson Case was ignored by the full Court of Criminal Appeals, and the following excerpt from the case of Van Hook v. Selma, 70 Ala. 362, 45 Am. Rep. 85, was fully approved:

"We declare the true rule to be in the case of useful trades and employments, and a fortiori in other cases, that as an exercise of police power merely the amount exacted for a license, though designed for regulation and not for revenue, is not to be confined to the expense of issuing it; but that a reasonable compensation may be charged for the additional expense of municipal supervision over the particular business or vocation at the place where it is licensed. For this purpose the services of officers may be required and incidental expenses may be otherwise incurred in the faithful enforcement of such police inspection or superintendence. The rule further applies here that when the question as to the reasonableness of a municipal by-law or city ordinance is raised, and it has reference to a subject-matter within the corporate jurisdiction, it will be presumed to be reasonable, unless the contrary appears on the face of the law itself, or is established by proper evidence."

It was held that the court could not judicially know that a license fee of $10 was unreasonable for all persons selling goods, wares, and merchandise. The Alabama case effectually meets every assault upon the ordinance on the ground that it levies an occupation tax under the guise of a license fee. It is claimed that all the Texas cases on the subject of license fees relate to vehicles and not to occupations, but not so the Alabama case which applies to occupations. The Texas court also held:

"Under the above-quoted provision of our Constitution [as to occupation taxes], this is a question of some difficulty, but, after mature thought, we have come to the conclusion under the authorities we have been able to find that inspection fees are not a tax in the sense inhibited by our Constitution."

There is no real distinction between the matters involved in that case and those involved in this.

[13] The terms of the charter under which the ordinance was drawn clearly indicate that the grant was conferred on the city of San Antonio, not for purposes of revenue, but for regulation alone. As said by Cooley in his work on Taxation, pages 1139 to 1143:

"It is perhaps impossible to lay down any rule for the construction of such grants that shall be general and at the same time safe; but, as all delegated powers to tax are to be closely scanned and strictly construed, it would seem

that when a power to license is given the intendment must be that regulation is the object, unless there is something in the language of the grant, or in the circumstances under which it is made, indicating with sufficient certainty that the raising of revenue by means thereof was contemplated."

The author further says:

"The fee, of course, must be prescribed in advance, and when it cannot be determined with any accuracy what the cost of regulation is to be: it must therefore be based upon the estimates, with more or less probability that the result will fail to come anything near a verification of the calculations. Moreover, in fixing upon the fee, it is proper and reasonable to take into account not the expense merely of direct regulation, but all the incidental consequences that may be likely to subject the public to cost in consequence of the business licensed. * * * And all reasonable intendments must favor the fairness and justice of a fee thus fixed; it will not be held excessive unless it is manifestly something more than a fee or regulation."

In the case of Brown v. City of Galveston, 97 Tex. 1, 75 S. W. 488, it was held that a license could be required of occupations and callings, for regulatory purposes, and that—

"When a city is authorized to levy a license tax upon particular property or business, and that tax has been imposed upon the property, it will be presumed that the levy was made for the purposes authorized by law."

The case of Ex parte Gregory, 20 Tex. App. 219, 54 Am. Rep. 516, was cited and approved as it was in the Cramer Case. No distinction is made between a license to run a vehicle and a license to pursue an occupation as is insisted by appellants.

The case of Railway v. City of Dallas, 98 Tex. 396, 84 S. W. 648, 70 L. R. A. 850, is commended by appellants as "most lucid and satisfying touching limitations upon police power of the state and municipal corporations," and we find nothing in it that would condemn the power of the city of San Antonio to protect the health of the public by enacting ordinances to regulate barbers in order to prevent the communication of diseases by barbers, and conserve the health of the public, by certain reasonable sanitary requirements. On the other hand the opinion recognizes—

"the power of the Legislature to regulate the use of property and the carrying on of business so as to protect the health, safety, and comfort of citizens, * * * and its use is not to be defeated by the mere fact that loss or expense may be imposed upon the owners of the property or business."

No one has contended that the power is an arbitrary one, nor that it can exceed the duty to meet the real needs of the people in their health, safety, comfort, and conven-

ience, nor is it contended that the ordinance attacked by appellants is an arbitrary or despotic exercise of power, nor that it will not protect from disease and conserve health. It is merely attacked as unconstitutional and void, and the Supreme Court does not so hold in the last-cited case or any other.

[14] We conclude that the ordinance is a sanitary measure enacted for sanitary purposes, under a proper delegation of power from the Legislature in consonance with the Constitution of Texas, that it is not unreasonable, and that it does not levy an occupation tax, but merely assesses a license fee for expenses, and not for revenue.

The judgment of the trial court is affirmed.