





# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

**GERALD C. MANN**
ATTORNEY GENERAL

May 20, 1939

Mr. N. J. Dartez, Secretary
State Board of Barber Examiners
Austin, Texas

Dear Sir:

Opinion No. O-720
Re: Requirement of section 4 (a)
of Midland City Ordinance
that barbers undergo a blood
test.

Your request for an opinion as to whether or not the barbers of Midland can be required to have a blood test to practice their trade in that city when the state law requires only a health certificate, has been received by this department. Our answer to your inquiry is confined to our construction of section 4 (a) of the Midland City Ordinance quoted in your request as follows:

"Owners of barber shops and/or beauty parlors shall employ no barbers, cosmetologists or other persons, including porters or assistants, who handle tools, supplies, or other things in said shops or parlors, or permit them to work in said shops or parlors unless said barber or cosmetologist or other person has had a blood test showing freedom from infectious or communicable disease and has in his possession a Registration and Identification Certificate mentioned in said Health Certificate Ordinance; nor shall any barber, cosmetologist or such other person work in a barber shop or beauty parlor or

pursue his trade in connection with
barbering or cosmetology in said City
unless he has had said blood test
and has in his possession such regis-
tration and Identification Certifi-
cate. Such certificate shall be valid
for six months only from date of is-
suance."

We assume your doubt of the force of
the above section rests on the constitutionality
of the attempted regulation.

The power to regulate for the protec-
tion of public health in this day of prophylaxis
is established beyond doubt. The constitutional
authority of a municipal corporation in Texas
to regulate the profession of barbers from a
sanitary or health standpoint has been established
in the case of Hanzal v. City of San Antonio, 221
SW 237, Court of Civil Appeals (error refused).
See also 20 A.L.R., page 1108.

In the instant opinion we have before
us the right of a municipal corporation to regu-
late an occupation after the state has exercised
the legislative control over that occupation.
The courts of this state have held that a business
or occupation licensed by state law may be regu-
lated within a reasonable limit, by municipal
ordinance, if the regulation does not impair the
right under the state license. See "Ex Parte
Brewer," 152 SW 1068, a Texas case.

Let us consider our state regulation
of barbers and cosmetologists with reference to
physical examination. Our Texas Barber Law, arti-
cle 734a, section 21, subsection (1) of our Penal
Code reads as follows:

"No certificate shall be issued or

Mr. N. J. Dartez, May 20, 1939, Page 3

renewed unless and until each appli-
cant shall present a health certifi-
cate from a regular practicing medical
doctor showing that the applicant is
free from any kind of infectious or
contagious diseases, tuberculosis,
communicable diseases, free from the
use of any kind of morphine, cocaine,
or other habit-forming drug, or a
habitual drunkard and that said ap-
plicant shall make affidavit to said
medical examination that all of said
facts are true."

The above section requires an examin-
ation once a year and a health certificate is the
requirement of the applicant. Thus, a blood test
is not necessary to comply with the state statute,
however, a certificate evidencing a blood test
would satisfy the state requirement. The city
of Midland, a home rule city, has attempted to
strengthen the requirement as to the physical
condition of barbers and cosmetologists. In
order to comply with the city ordinance it will
be necessary for a barber to have two or not
more than three blood tests a year, one of which
may also be used to qualify for a state license.

Our state law on hairdressers and cos-
metologists, article 734b, section 10, subsection
(b) of our Penal Code reads as follows:

"All applications for examina-
tion and for license shall be accom-
panied by a health certificate by a
regularly licensed doctor of medicine,
showing the applicant to be free from
any contagious or infectious diseases
as determined by a general examina-
tion and Wasserman blood test."

The persons following that profession are presently required to have a Wasserman blood test once a year. The Midland Ordinance will require another such test six months from the date of the last one.

The courts of this and other states are wont to sustain any reasonable municipal regulation for the protection of health and the preservation of the lives of our citizens. This is true, though the municipal regulation goes further than state regulation. See 43 Corpus Juris p. 220 and Gulf C. & S. F. R. Co. v. Calvert, 32 SW 246, error refused. For other authorities holding that a city may enlarge the requirements of a statute where the regulation moves in the same direction and not counter to the state law, and that such regulation is consistent with the state law, see Olson v. Plattville 91 A.L.R. 308 and Spitler v. Town of Munster 115 A.L.R. 1395.

In our opinion the attempted regulation is consistent with the purpose of the legislature to protect the public health from the dangers of skin infections, scalp diseases or any other contagious diseases. It goes further than the state law, but moves in the same direction, not counter to it, and has a commendable purpose.

While our state laws have not undertaken to regulate porters, they do regulate assistants to barbers and cosmetologists and require physical examinations of those persons. This attempted regulation is a health measure and the requirement of blood tests of porters handling the tools or supplies of a shop is a reasonable one. It should be a stimulus to the present efforts of State Health Authorities, to eradicate social diseases.



.e are faced with another test of this attempted regulation. Does it invade a field reserved to itself by our legislature by reason of state legislation upon this matter?

The ordinance under consideration is designed as a health measure. The power of a city to pass ordinances for the protection of health after the state has passed similar laws seems to rest upon their conformity with the state law upon the same subject. See Mantel v. State, 117 SW 855.

The city of Midland has imposed no sort of tax upon the barbers or cosmetologists; it makes no requirement of moral character or of the trade name used and it does not attempt to pass upon the competency of the person to practice the profession. Those matters are left to the controlling State Boards authorized by statute to determine those facts. We do not believe that the legislature by enacting article 734a and article 734b of our Penal Code intended to or did usurp the exclusive power to protect the public health in barber and beauty shops. The attempted regulation is not violative of state regulation, but is in harmoney with it.

It is the opinion of this department that section 4a of the City Ordinance of Midland, Texas as submitted in your letter of April 27, 1939 is a valid regulation and is obligatory upon the persons named therein.

Yours very truly

ATTORNEY GENERAL OF TEXAS

(Signed)

By          Morris Hodges
                    Assistant

MH:omb

APPROVED:

Gerald C. Mann      (Signed)
ATTORNEY GENERAL OF TEXAS